CHARLES V. CARRINGTON v. OMAHA LIFE ASSOCIATION.

FILED OCTOBER 18, 1899.   No. 8,990.

Fraud: DAMAGES.  Fraud, to constitute a cause of action, counter-
    claim or defense, must have been fruitful of injury, or damage
    to the party who seeks to avail of it.

ERROR from the district court of Douglas county.
Tried below before FERGUSON, J.   *Reversed.*

*Brome & Burnett,* for plaintiff in error.

*Byron G. Burbank, contra.*

HARRISON, C. J.

The plaintiff herein commenced this action in the dis-
trict court of Douglas county, and alleged for the cause
that, upon a stated date, he was a practicing physician in
the city of Richmond, Virginia, and was then and there
employed by the defendant company or association to act
as its physician at said place, to examine any and all ap-
plicants for insurance or membership in the association
and report the result to it; that for each examination his
agreed compensation was to be the sum of $3.   It was
further pleaded that, at a subsequent date, there was a
further contract that the plaintiff should receive $2 ad-
ditional compensation for every "block" of 100 applicants
examined by him.   It was further stated that, pursuant
to his employment, the plaintiff had examined 463 per-
sons, for which services there had become due him from
the association $2,233, of which sum he had been paid
$485, the balance, $1,748, being his due and unpaid.   An
itemized statement of the account was filed with the peti-
tion.

The answer of the association contained an admission
of its employment of the plaintiff, in the capacity and for
the purpose set forth in the petition, and a denial of each
and every other allegation of the plaintiff's petition.

For further defense the answer alleged that the plaintiff agreed, and undertook in good faith, to examine all persons who might apply in the city of Richmond for insurance in defendant company, for which plaintiff agreed to pay $3 for each person so examined; that on October 1, 1893, the defendant, relying upon the honesty, integrity, and good faith of the plaintiff, placed him in charge of defendant's business in Richmond, Virginia, and that plaintiff continued as its agent thereafter during all times mentioned in plaintiff's petition, and that plaintiff was the only representative defendant had in Richmond, and that it was agreed and understood between the plaintiff and defendant that the defendant would pay the plaintiff, as compensation for all applications for insurance taken by the plaintiff or his solicitors in good faith, a sum equal to the first quarterly payment as described in the company's table of rates, graded according to the age of the applicant; that subsequent to October 1, 1893, defendant agreed to pay plaintiff for every block of twenty-five applications sent in good faith, and approved by defendant, the sum of $50, but that within one week thereafter defendant canceled said agreement for extra commission or bonus, and notified the plaintiff of such cancellation, and that the agreement was never thereafter renewed.

That it was understood and agreed between the plaintiff and the defendant that no application would be taken in or sent to the defendant except *bona fide* applications made in good faith and paid for by the plaintiff, together with the said application, at the rate described in the company's table of rates according to the age of the applicant; that defendant never authorized the plaintiff, or any one acting under the plaintiff, to give away any of its policies or certificates of insurance; that the defendant, in violation of his duties as medical examiner and agent for defendant, fraudulently obtained a large number of persons to sign applications for insurance in defendant company for the express purpose of obtaining the fee of $3 for examining and said bonus of $2 per ap-

plication as hereinbefore stated; that plaintiff obtained a large number of persons to act with and for him in fraudulently obtaining persons to sign applications, and submit to the examination for the express and only purpose of obtaining the examiner's fee of $3, and the bonus of $2 for each application for blocks of twenty-five; that 463 persons did so sign applications for the aforesaid fraudulent purpose, and the plaintiff fraudulently forwarded to the defendant said applications, representing to the defendant that said applications were in good faith; that defendant, relying upon the honesty and representations of the plaintiff, issued policies upon a large number of said applications, to-wit, 419; that none of the said applications so sent to defendant by plaintiff were taken in good faith, but the same were all taken with intent upon the part of the plaintiff to defraud the defendant out of the examiner's fee and bonus as aforesaid; that when the last forty-four applications were received from plaintiff, it notified plaintiff that it had been informed that plaintiff was not transacting defendant's business honestly and in good faith; that all the applications plaintiff had sent were fraudulent; that defendant held the said forty-four applications subject to plaintiff's order; that it never issued any policies upon any of the said forty-four applications, and none of the said forty-four persons named therein ever made inquiry of defendant why it had not issued said policies and never applied to defendant for a return of the premium, or in any manner demanded anything or any information from this defendant; that said forty-four applications, together with all the other applications, were part of a deliberate scheme of plaintiff to defraud the defendant out of the $3 examiner's fee and $2 bonus.

Defendant further alleged that not a single applicant continued said insurance in force by the payment of the second quarterly premium; that the plaintiff and those acting under him never in any instance collected any portion of the first quarterly premium or membership fee

which were required from any of the persons whose application plaintiff sent to defendant; that the plaintiff and those acting under him told the applicant he would not have to pay anything for the policy; that by signing the application he would obtain three months' insurance for nothing; that at the end of three months he need not make any further payments unless he should so desire; that by signing the application and submitting to an examination, he would enable the plaintiff and those acting under him to obtain a fee for such examination; that the company did not care whether he kept up the policy or not; that the plaintiff knew that said statement and each and every one made by him and those acting under him were false and fraudulent; that, relying upon the truth and honesty of the applications and the examinations made by plaintiff and those acting under him, the defendant sent to the plaintiff $485, being $51 on October 14, $224 November 7, $110 November 27, and December 18, 1893, $100, and prayed judgment against said defendant in the sum of $485, and interest at the rate of seven per cent from dates of the several payments.

The reply was a general denial of all new matter stated in the answer, and further as follows:·

"Plaintiff denies that he ever in any manner sought to or did misrepresent any fact to defendant in respect to procuring insurance for the defendant. Denies that he ever accepted the agency for or was the agent of defendant, either in the city of Richmond, Virginia, or elsewhere, other than in his capacity of medical examiner for said defendant, and in this behalf alleges that at the time of his appointment as such medical examiner it was understood and agreed by and between plaintiff and defendant that this plaintiff should in every manner consistent aid Edward Henry Kent, who was at that time and during all the times hereinafter mentioned, a duly authorized agent of defendant and a director of agents of defendant, and also a member of the board of directors of defendant, and acting as such director of agents for said

defendant in the city of Richmond, Virginia, in advising persons of standing and influence and others who were friends or acquaintances of plaintiff, who were desirous of taking out insurance, to insure in defendant's company; that plaintiff received no compensation whatever for his aid in this respect other than his examination fees and the amount of $2 per person on blocks of twenty-five applications contracted to be paid by defendant; that this plaintiff did, as he agreed, advise all persons with whom he was acquainted who were desirous of taking out life insurance, to insure in defendant's company, and in every manner carried out his agreement in this respect.

"This plaintiff admits that on the 5th day of November, 1893, he was notified by the said Edward Henry Kent that the fee of $2 per applicant on blocks of twenty-five applications would no longer be paid, but in that behalf avers that on November 10, 1893, he received notice from said Kent to proceed under the terms of the old agreement, which plaintiff did and continued to do and act in his capacity as medical examiner for the city of Richmond up to the time that he found that defendant would not comply with the laws of the state of Virginia with reference to life insurance companies doing business in that state, as hereinafter specified, when this plaintiff severed his connection with defendant.

"That at the time of the appointment of this plaintiff as medical examiner as aforesaid for defendant it was understood and agreed by defendant that the first premium was to be given to persons taking out insurance in said defendant's company, in order to induce them to take out such insurance and in order to give defendant good standing in the city of Richmond, by having a large statement of business done for the year 1893 to be published for advertisement and to procure persons of means and influence to become insurers therein so that their names could be used to procure other persons to take out insurance in said company, and also for the reason that a large number of persons would keep up said insurance

after having once become members of defendant's company; that said applicants notified plaintiff at the time of their examination that it was their intention to keep up said insurance if said company complied with the laws of the state of Virginia, as defendant represented it would do; that said defendant did not comply with the laws of said state with reference to insurance companies doing business therein in any manner whatever, either before the second premiums on the policies of said applicants became due or since that time, and the policy-holders could not with any degree of safety or security, and would not, and for that reason, and no other, did not pay the second premiums on said policies of insurance referred to in defendant's answer.

"Further replying, plaintiff alleges and states the fact to be that he has in everything pertaining to this transaction acted in good faith and in accordance with, and under the immediate direction and instructions of the duly authorized officers and agents of defendant, both in respect to aiding to advertise said defendant and examining applicants for insurance therein."

Of the issues there was a trial to a jury, which resulted in a verdict for the plaintiff in the sum of $1, and after a motion for a new trial was heard and overruled, a judgment was rendered on the verdict. The plaintiff presents the case to this court for review.

The main question for decision relates to the sufficiency of the evidence to sustain a finding of fraud practiced by the plaintiff which furnished a defense for the association against a recovery on the account for services. The plaintiff was employed for the association by Edward Henry Kent, who it appears was a member of the association, a member of its "managing board of directors, and director of agents," and with whom the association had a written agreement, in which appears the following: "The party of the second part agrees to devote all his time and energies to prosecuting the business of said party of the first part, to have charge of the

agency department of said party of the first part, as provided by the by-laws of said party of the first part relating to directors of agents, and to in every way use his best endeavors in procuring applications for insurance which shall be satisfactory to said party of the first part; the election as director of agents and corporate member, and member of the managing board of directors, to take effect, and be in full force from and after the date hereof. In consideration of which the party of the first part agrees to pay the party of the second part his legitimate traveling expenses from month to month, said party of the second part to retain the first quarter's fees by him collected on account of accepted applications, and in addition thereto said party of the second part shall have a twenty per centum of the profits of the association, exclusive of the salary or compensation allowed the officers and directors of said party of the first part."

Parties in Richmond who made applications to become members of the association and were examined by the plaintiff, and who were prompted so to do by the solicitations of Kent, were respectively not to pay the "first quarter fees" due on policies issued to them, and this was also a part of the plan which by Kent's authorization was adopted and used by the plaintiff, and all the persons who solicited others to join the association, each one approached and who applied was to receive a policy, and to pay nothing for it during its first quarter's existence. These Richmond, Virginia, applications were forwarded to the association nominally, at least, through or as taken under the supervision of Kent. The "first quarter fees" belonged to Kent; with them or their payment or disposition the association had no further concern, provided Kent was satisfied. He might give them to any applicant for a policy or authorize such gift, and that he did so, or parties authorized by him, constituted no fraud on the association, could not injure it or damage it. See *Pythian Life Ass'n v. Preston*, 47 Nebr., 374. At the time the services of the plaintiff were rendered to the associa-

tion it had not complied with the laws of Virginia in regard to such companies or associations, and was not authorized to do any business in that state, but it contemplated such compliance, and the business was solicited and transacted with the full expectation that the association would fulfill the requirements of the laws, and be granted the right to perform its functions within the state; but the idea was abandoned or at least never pursued. · The association did not apply for or receive the liberty to engage in business in that state.

It is urged for the defendant that the plaintiff and the solicitors in Richmond, and who it appears reported to and were to be paid by him, stated to parties who were being urged to become insured, as an inducement, such persons being friends of either the plaintiff or a solicitor, that their so doing would enable the plaintiff or solicitor, or both, to get fees from the defendant association, and that this was the main, if not the sole, reason why many persons became applicants for insurance; also, that the statement was made to each one solicited in Richmond to join the association that at the expiration of the first quarter, for which, it will be borne in mind, no fees were to be paid, it would be optional with any party who held a policy to pay fees for the continuation of its existence, or not to do so, and allow the insurance to lapse. It appears that such representations were made to some of the parties and not to others; but even if they were made separately or connectedly, did they constitute matter of fraud against, and available to, the association in this action? Whatever the representations may have been, the result of all the prior negotiations between the plaintiff, the solicitors, and the parties to whom policies were issued was an application, which was, by the terms of the policy in each instance of insurance, made a part of it as a contract. Each application was signed by the applicant, and immediately above the signature appeared the following: "I do hereby agree to pay to said Omaha Life Association the money required to keep the policy

issued hereon in full force and effect, as provided in the by-laws of said association, and I hereby adopt said by-laws and agree to be governed by them, and will obey and comply with every article, its subdivisions, and the stipulations or provisions contained therein, until notice is given by me in writing of any intention to terminate said insurance." In short, the result was a contract in favor of the association, if it had been authorized to do business in Virginia, fully enforceable, and against the validity or full force of which none of the parties insured could have successfully urged the representations made by plaintiff or solicitors. The representations, then, did not produce anything from which the association did, or could in any event, suffer any injury or damage, and this being true, these things were not matters actionable in favor of the association, or of counter-claim or defense in this action. There were no matters in evidence which disclosed any fraud in the transactions in question which was the source of any injury or damage to the defendant, or which could have been; from which it follows that the evidence was insufficient to support a finding in its favor on the subject of fraud, and the judgment must be reversed and the cause remanded.

REVERSED AND REMANDED.