Argued 20 October, decided 16 November, 1903.

### ANDERSON v. ADAMS.

[74 Pac. 215.]

43 621
844 529
43 621
46 156
46 271
46 392

AGENTS — IMPLIED WARRANTY OF AUTHORITY — DAMAGES.

1. Where an agent makes a contract on behalf of his principal in excess of his authority, he is personally liable thereon, under an implied warranty of authority, even though he made no false representations concerning his authority.

FORM OF ACTION ON BREACH OF AUTHORIZED CONTRACT BY AGENT.

2. In an action against an agent for damages caused by not complying with a contract on behalf of his principal in excess of his authority, in which there is no allegation that defendant falsely represented himself to be the agent of the party in whose behalf the contract was made, the action is in contract for breach of an implied warranty of authority and not in tort for deceit.

ADMISSIONS AGAINST INTEREST AS EVIDENCE.

3. Under the general rule that admissions against interest are competent evidence against one making them, it is competent and material, in a damage action against an agent for not performing a contract that he had made without authority, to show that after the contract was made the agent stated that·he had no authority from his principal to make it.

ACT OF GOD AS A JUSTIFICATION FOR A BREACH OF A CONTRACT.

4. In an action against an agent for a breach of a contract made by him in excess of his authority, to furnish water to irrigate land which he, on behalf of his principal leased to plaintiff, defendant pleaded that he was prevented from performing the contract by an act of God, and during the trial his counsel offered to show that the land was under two ditches, that the old one was so low that it was impossible to irrigate any of the land from it, and that the new one was so nearly level that while in ordinary seasons it would furnish a supply of water, yet, in consequence of the drought in the season covered by the contract, no water would flow therein. Held, that the offer did not tend to show a failure to perform because of an act of God, as there was no offer to prove that the water supply of the ditch had ceased to exist, but tended to show only that the land could not be watered that summer from either of the ditches referred to. To excuse performance it should have been shown that the irrigation was or had become physically impossible of accomplishment.

EVIDENCE AS TO VALUE OF LOST CROP.

5. In an action for damages suffered by loss of a growing crop through failure to provide water as contracted for, it is competent to show the condition of the

crop at the time when irrigation was necessary and the probable yield had the water been furnished.

AGENCY — QUESTIONS FOR COURT AND JURY RESPECTIVELY.

6. Whether a person was or was not the agent of another is a question of fact for the jury, but what may be done by the agent under the power conferred is a question of law for the judge.

EVIDENCE OF TERMS OF AGENCY.

7. The evidence offered herein on the question of the extent of the agency involved does not show that defendant had authority from his principal to make the contract he did make.

COSTS OF APPEAL ON CONDITIONAL AFFIRMANCE.

8. Where it appears that a judgment is erroneous only in an ascertainable amount, caused by an error in computation, or in allowing interest by mistake, or the like, costs should be allowed the appellant, though the case is practically affirmed, provided the error was noted and objected to when made. If the attention of the trial court could have been, but was not, called to the error, the penalty is the payment of the costs; but if the adversary had an opportunity to remit the excess before the appeal, and would not, he must pay the costs.

DIRECTING PARTICULAR JUDGMENT.

9. The facts being undisputed, a judgment in a law action may be affirmed on condition that a specified and evident excess be remitted, and the case remanded with direction to enter a stated judgment.

From Klamath: HENRY L. BENSON, Judge.

This is an action by R. C. Anderson to recover damages from J. F. Adams, an agent, for the breach of an agreement claimed to have been made in excess of his authority. It is alleged in the complaint, in substance, that about February —, 1898, the defendant, representing that he was the authorized agent of one Jesse D. Carr, entered into an oral agreement whereby he leased to plaintiff, until October 15th of that year, 120 acres of land in Klamath County, stipulating to construct all ditches necessary, and furnish water sufficient to irrigate a crop of wheat to be grown thereon, in consideration of which plaintiff agreed to plow the land, sow the grain, properly care for and tend the same, and at threshing time deliver to defendant and Carr, at Brandon Bros.' mill at Merrill, in said county, one fourth of the grain so raised ; Carr to have all the straw, and the right to pasture said leased land after the threshing ; that, in pursuance of said agreement, and relying upon and believing the representations of the defendant that he was

the authorized agent of Carr, and that he had full authority
to make said contract, plaintiff entered into possession of
said premises, put in the crop, and in all respects fully
complied with the terms and conditions of the agreement,
so far as he was permitted by the defendant and Carr; that
the land so leased is situated in an arid region, unproduc-
tive without irrigation, which was well known to Carr and
the defendant, who, though often requested so to do, failed
to furnish water to irrigate said land during the season of
1898, by reason whereof said crop dried up and became a
total failure; that if water had been furnished, sufficient
for such irrigation, plaintiff would, after paying all ex-
penses, have realized from his share of the crop $1,185, in
which sum he was damaged by the failure of defendant
and Carr to keep and perform the conditions of said agree-
ment, no part of which sum has been paid; that Carr, deny-
ing the authority of the defendant to make said contract,
has repudiated the same, and plaintiff alleges that defend-
ant entered into it in the name of Carr without authority.
Judgment is demanded for the sum of $1,185, with interest
from February —, 1898, at the rate of 8 per cent per annum.

A demurrer to the complaint on the ground that it did
not state facts sufficient to constitute a cause of action, and
that two causes were improperly united, having been over-
ruled, an answer was filed, denying the material allega-
tions of the complaint, and, for a further defense, setting
out what purports to be a copy of the lease of said prem-
ises, prepared by the defendant, but not signed by the
parties, wherein it is stipulated that the lessor would fur-
nish water from the Little Klamath Ditch sufficient to
irrigate said tract, where practicable. For a second de-
fense it is alleged that the spring and summer season of
1898, in the vicinity of said land, was unusually dry, and
the drought such as was not contemplated by either party,
and could not have been anticipated or provided against

by the exercise of ordinary diligence or foresight, and by reason thereof the water supply of the Little Klamath Ditch receded to such an extent that, excepting a small stream, it ceased to flow therein, and could not be furnished therefrom to irrigate the demised premises during the greater part of the irrigating season, but that defendant, as the agent of Carr, furnished to said land all the water that could or would flow in the ditch ; "that there was no source of water supply by which said lands, or any part thereof, could have been irrigated through said Little Klamath Water Ditch, during the irrigating season of the year 1898, and that there was no other source of water supply by which it was practicable to irrigate said lands, or any part thereof, during the irrigating season of said year;" that any failure by Carr or the defendant, as his agent, or otherwise, to furnish more water than was supplied, was caused by the act of God, whereby they were excused. For a third defense it is alleged that on March 27, 1898, Carr, at plaintiff's request, loaned him the sum of $75, which he agreed to repay October 15th of that year, with interest at the rate of 10 per cent per annum from the date of the loan ; that no part thereof has been paid ; and that, prior to the commencement of this action, Carr, for a valuable consideration, assigned said claim to the defendant, for the amount of which he prays judgment. The reply having put in issue the allegations of new matter in the answer, a trial was had, resulting in a verdict for plaintiff, assessing his damages at $726.75, and awarding him interest thereon at the rate of 6 per cent per annum from November 13, 1898, amounting, with the principal, to $901.19 ; and judgment having been rendered in accordance therewith, the defendant appeals.

AFFIRMED.

For appellant there was a brief and an oral argument by *Mr. J. W. Hamaker.*

For respondent there was a brief over the names of *Hiram F. Murdoch* and *Austin S. Hammond,* with an oral argument by *Mr. Hammond.*

MR. CHIEF JUSTICE MOORE, after stating the facts as above, delivered the opinion of the court.

1. It is contended by defendant's counsel that the complaint does not state facts sufficient to constitute a cause of action, and that the court erred in overruling the demurrer. It is argued that, as no fraud is alleged in the complaint, an action of deceit cannot be founded thereon, and, inasmuch as the damages sought to be recovered are based upon the contract, and not upon the injury resulting from the defendant's alleged want of authority to enter into the agreement, the action cannot be maintained upon the theory of an implied warranty of such authority. Though there is a conflict of judicial utterance in respect to the form of action against an agent who has honestly, but erroneously, exceeded his authority, it has been held in this state that an agent who makes a contract on behalf of his principal in excess of his authority is, on the repudiation of the agreement by the principal, personally liable thereon, though he made no false representations concerning his authority, and, as he impliedly warranted that he was empowered to make the contract, the action will be construed as in contract, instead of in tort: *Cochran* v. *Baker,* 34 Or. 555 (56 Pac. 641). In deciding that case, Mr. Chief Justice WOLVERTON, speaking for the court, said: "The agent, by undertaking to act for another as his principal, tacitly and impliedly represents himself to be authorized, as a matter of fact, to so act, and becomes liable if it appears that he assumed as true that which he did not know to be so. The reason upon which the liability is founded is that the party dealing with a supposed agent is deprived of any remedy upon the contract against the principal.

*43 Or.—40.*

The contract, though in form that of the principal, is not his in fact, and, of course, is not susceptible of enforcement against him; and, as the loss must fall somewhere, it is but a rule of justice that it should be borne by him whose acts made it possible." Though the agent who has exceeded his authority cannot be sued on the contract itself, as a party thereto, unless it contains apt words to charge him (1 Am. & Eng. Ency. Law, 2 ed., 1128; Story, Agency, 9 ed., § 264a; *Hall* v. *Crandall*, 29 Cal. 567, 89 Am. Dec. 64), an action may be maintained against him on his implied promise that he had authority to bind the principal: *Farmers' Co-op. Trust Co.* v. *Floyd*, 47 Ohio St. 525 (26 N. E. 110, 12 L. R. A. 346, 21 Am. St. Rep. 846). This promise is not a part of the agreement supposed to have been entered into with the principal, but independent thereof, and tantamount to an implied warranty that, if a third party will enter into a contract with the agent on behalf of his principal, he will indemnify such party against any loss that he may sustain, if it shall be ascertained that he does not possess the measure of authority which he assumes. Such warranty being impliedly given, it cannot be said that in enforcing it the court makes a new contract for the agent and a third party. We are satisfied with the rule announced in *Cochran* v. *Baker*, 34 Or. 555 (56 Pac. 641), and think no error was committed in construing the complaint as an action *ex contractu* on the implied warranty, or in overruling the demurrer.

2. The plaintiff having submitted his testimony and rested, defendant's counsel moved the court for a judgment of nonsuit, on the ground that the action was for the alleged fraud and deceit of the defendant in falsely representing himself to be the agent of Jesse D. Carr, and that he had failed to produce any evidence to support such allegation; but, the motion having been denied and an exception saved, it is contended that an error was thus

committed. It is nowhere alleged in the complaint that the defendant "falsely" represented that he was Carr's agent, and, this being so, we do not think the action is in tort for deceit, but in contract for an alleged breach of the defendant's implied warranty. In an action for deceit, the plaintiff must set out in the complaint the representation, and allege the falsity thereof: 8 Ency. Pl. & Pr. 899. To constitute a fraud by false representations, so as to entitle the plaintiff to relief, three things must concur: (1) There must be a knowingly false representation; (2) the plaintiff must have believed it to be true, relied thereon, and have been deceived thereby; and (3) that such representation was of matter relating to the contract about which the representation was made, which, if true, would have been to plaintiff's advantage, but, being false, caused him damage and injury: *Rolfes* v. *Russel,* 5 Or. 400; *Grangers' Market Co.* v. *Vinson,* 6 Or. 172; *Dunning* v. *Cresson,* 6 Or. 241; *Britt* v. *Marks,* 20 Or. 223 (25 Pac. 636); *Schoellhamer* v. *Rometsch,* 26 Or. 394 (38 Pac. 344); *Cawston* v. *Sturgis,* 29 Or. 331 (43 Pac. 656); *Martin* v. *Eagle Develop. Co.* 41 Or. 448 (69 Pac. 216). The plaintiff's counsel, evidently intending to frame the complaint so as to avoid any controversy in respect to the form of action, omitted the averments required in an action of deceit; thus showing that he based the relief sought in contract for the breach of the implied warranty.

3. It is argued in the defendant's brief that, as the gist of the action is based upon the defendant's want of authority, the burden was imposed upon the plaintiff to prove that Carr had not vested the defendant with the measure of power assumed by him, and that, no testimony having been offered on this subject, an error was committed in not granting defendant's motion for a judgment of nonsuit. The point thus insisted upon was not called to the attention of the trial court, but, if it had been, we think

there was sufficient testimony introduced by plaintiff to
show that the contention is without merit.  The bill of
exceptions discloses that testimony was offered tending to
show that Jesse D. Carr, a resident of Salinas, California,
owned a section of land in Klamath County, which he
caused to be cleared of sagebrush, and appointed the de-
fendant as his agent to lease it for the purpose of raising
grain, so that the land might be brought into proper cul-
tivation for the growth of alfalfa thereon.  In pursuance
of such appointment, the defendant, as Carr's agent, leased
120 acres of said land to plaintiff, and, honestly supposing
he had authority to furnish water for irrigation, stipulated
to do so; but, no water having been supplied, the crop of
wheat sowed on the land by plaintiff was destroyed.  The
complaint having alleged that the defendant had no au-
thority on behalf of his principal to stipulate to furnish
water for irrigation, the burden was assumed by the plain-
tiff to prove the fact so stated: *Noe* v. *Gregory*, 7 Daly, 283.
The plaintiff, as a witness in his own behalf, was asked
whether he had ever heard the defendant say, since said
crop of wheat was destroyed, that he had authority to fur-
nish water for irrigation.  An objection to the question on
the ground that it was incompetent and immaterial having
been overruled, and an exception allowed, the witness
replied: "He said he didn't have no authority to furnish
water.  That is what he said on the stand — that he didn't
have no authority to furnish water."  The stand referred
to in the answer was the witness stand, and the declaration
so imputed to the defendant is the testimony which he
gave as a witness in the action of *Durkee* v. *Carr*, 38 Or. 189
(63 Pac. 117), involving Carr's liability on his stipulation
to furnish water to another party for irrigation.  No objec-
tion to the question propounded to the plaintiff was inter-
posed on the ground that a proper foundation therefor had
not been laid, or that the time, place, and persons present

had not been detailed with particularity, so as to call the attention of the witness thereto, for, if the objection had been based on these grounds, it would doubtless have been sustained; but, as made, it was not well taken, and therefore properly overruled. The plaintiff having testified that the defendant, on the witness stand, admitted at the trial of another action that he had no authority on behalf of Carr to furnish water for irrigation, affords some evidence from which the jury might conclude that, in making the contract entered into with the plaintiff, the defendant exceeded the power delegated to him. The plaintiff's testimony is corroborated by that of the witness Bert Davis, who testified that he was present in court at the trial of the said case of *Durkee* v. *Carr*, the nature of which action he explained; and, referring to the defendant's testimony given at that trial, he said: "I remember when they asked him if he had authority to furnish water, and he said he didn't. I remember that very distinctly." The declarations so imputed to the defendant were against his interest, and therefore admissible (*White* v. *Madison*, 26 N. Y. 117), and hence no error was committed in overruling the motion for a judgment of nonsuit.

4. The defendant, as a witness in his own behalf, was asked on direct examination to state what the relative difference in elevation was between the old and the new ditches extending from the Little Klamath Ditch to the demised premises. An objection to the question having been interposed on the ground that the answer sought to be elicited was irrelevant and immaterial, the defendant's counsel thereupon stated to the court that they expected to show by the witness that the level of the old ditch was so low that it was impossible to irrigate any part of Carr's land from it, and that the new ditch, by which a part of the said section could be covered, was so nearly level that water would not easily flow therein, and was subject to

evaporation, requiring more water to get it through, and that, while in ordinary seasons the new ditch furnished a supply of water, in 1898, in consequence of the drought, no water would flow therein. The objection having been sustained, an exception was allowed; and it is contended by defendant's counsel that the testimony so offered was material, as tending to support the issue of the act of God, and that the court erred in excluding it. In *Pengra* v. *Wheeler*, 24 Or. 532 (34 Pac. 354, 21 L. R. A. 726), in commenting upon the act of God as an excuse for the nonperformance of the conditions of an agreement, it is said : "It is a well recognized principle of law that, when it is apparent that the parties have contracted on the basis of the continued existence of a given thing, then, on performance becoming due, if, without the fault of the parties, the thing has ceased to exist, the case has become one of mutual mistake, and the duty to perform no longer remains." Whether or not the drought in 1898 so affected the body of water from which the demised tract of land was to be irrigated as to cause the source to cease to exist, does not appear from inspection of the bill of exceptions, and the question so objected to appears only to go to the practicability of irrigating the leased land by means of a particular ditch. "It is a well established rule of law," say the editors of the American & English Encyclopedia of Law (2 ed.), vol. 1, p. 588, "that, where a person creates a charge or obligation upon himself by express contract, he will not be permitted to excuse himself therefrom by pleading an act of God rendering performance impracticable." In *Reid* v. *Alaska Packing Co.* 43 Or. 429 (73 Pac. 337), Mr. Justice BEAN, commenting upon this legal principle, says : "Before one can be excused, however, from the performance of a valid contract, deliberately entered into, because of the impossibility of performance, it must appear that the thing agreed to be done is impossible upon its face, and cannot, by any

means, be effected. It is no excuse for the nonperformance of a contract that it is impossible for the obligor to fulfill it, if the performance be in its nature possible." The question relating to the difference in elevation of the respective ditches, and the statement of defendant's counsel of what they expected to show if the witness was permitted to answer the question propounded to him, does not tend to show that the source of the water was wholly exhausted, so as to render the irrigation of the land physically impossible; and for this reason the act of God is not involved, and no error was committed in sustaining the objection to the question asked.

5. It is maintained that the court erred in permitting the plaintiff, over the defendant's objection and exception, to introduce testimony tending to show the condition of the crops on the leased land, and the probable yield of wheat therefrom if the premises had been irrigated. It is argued that, notwithstanding the land in question may have been properly irrigated, the wheat grown thereon might have been injured by frost, smut, or rust, which the testimony shows are hindrances to the growth of wheat in that vicinity, thus rendering the opinion of plaintiff's witnesses as to the probable quantity of wheat that could have been grown mere guesses, and therefore incompetent. It is incumbent upon a party always to offer the best testimony that is in his power to secure, the presumption being that higher evidence would be adverse from inferior being produced: B. & C. Comp. § 788, subd. 6. This rule narrows the inquiry to a consideration of whether or not the method adopted by plaintiff to prove the extent of his injury was the best that the circumstances afforded. The damage which a party has sustained in consequence of the breach of an agreement or of the act or neglect of another is in nearly every instance problematical, and can rarely ever be reduced to a mathematical certainty. Evi-

dence, therefore, that tends in any manner to establish
the measure of the injury sustained, is admissible, if it is
the best that can be secured. The testimony shows that
plaintiff had plowed the land and sowed the wheat, which
came up and grew until it withered and died for want of
water. The crop therefore had a potential existence, and
was of some value, the measure of which at the time of its
destruction might have been no greater than the value of
the wheat as pasture; but, as the plaintiff had a right to
suppose that the water agreed to be furnished would be
supplied, the damage he sustained was greater than the
value of the grain for the purpose assumed. If there was
no demand for the growing grain for feeding purposes, the
fact that it may have been worth a few cents per acre as a
fertilizer to the land does not fix the extent of the damage
sustained. The wheat was sown with the expectation of
harvesting it, and the measure of damages for the loss of
the crop is more than the cost of plowing and the value
of the seed ( *Gulf, Colo. & S. F. Ry. Co.* v. *Carter* [Tex. Civ.
App.] 25 S. W. 1023), and is equal to the value of the crop
in the condition it was before it perished: 8 Am. & Eng.
Ency. Law (2 ed.), 330. Evidence of the value of the crop
at maturity, less the cost of the labor, care, and attention
necessary to put it in condition for the nearest market, is
admissible, in connection with other evidence to enable
the jury to ascertain the amount of damages sustained:
*Gulf, Colo. & S. F. Ry. Co.* v. *Carter*, 25 S. W. 1023; *Shot-
well* v. *Dodge*, 8 Wash. 337 (36 Pac. 254). The extent of
the crop at maturity is the quantity that would probably
have been produced under the conditions agreed upon.
To determine such quantity, witnesses who were conver-
sant with the land in that vicinity, and knew from experi-
ence or observation the amount of wheat that could ordi-
narily be grown on an acre of such land when irrigated,
were competent to express an opinion as to the number of

bushels that could be produced. If the defendant thought the witnesses overestimated the quantity that could have been grown under the circumstances adverted to, he could undoubtedly have secured competent persons who would have made a fair estimate thereof; and, as this method of proving the value of the crop at the time of its destruction was the best that could have been devised, no error was committed in admitting the testimony so objected to.

6. The defendant, as a witness in his own behalf, having testified that the authority given him to enter into a contract with the plaintiff was derived from letters received from Carr, offered in evidence letters purporting to have been written by him November 24 and December 4, 1897, and July 5, 1898, which are referred to in the bill of exceptions as Exhibits A, B, and C, respectively. His counsel at the proper time requested the court to charge the jury in respect thereto as follows:

"I instruct you, as a matter of law, that if you are satisfied, as reasonable men, by the evidence, that J. D. Carr wrote the letters to Mr. Adams which have been filed in evidence herein as defendant's Exhibits A, B, and C, these letters gave defendant authority to make such contract for said Carr as the one set out in the complaint, and you should find for the defendant."

The request not having been granted, an exception to the court's refusal so to charge was saved, and it is insisted by defendant's counsel that an error was thereby committed. The existence of an agent's authority is a question of fact to be ascertained by the jury, but what the agent may do under the power conferred is a question of law to be determined by the court: *Glenn* v. *Savage,* 14 Or. 567 (13 Pac. 442); *Long Creek Building Assoc.* v. *State Ins. Co.* 29 Or. 569 (46 Pac. 366).

7. Carr, in the letter of November 24, 1897, evidently referring to some prior conversation with or communication

from the defendant, says: "I think your proposition was to furnish these parties with water the first year free." The parties here mentioned are the persons whom the defendant might secure as tenants for Carr's land. Further in the letter the writer says: "Whenever the time comes that we can get grain out of the country, I am willing to go to the expense of irrigating all my land that I can irrigate down at home and up on that section, but until that time I do not propose to spend any more money down there at home irrigating." In the letter of December 4, 1897, Carr, in referring to the letting of his land, wrote the defendant as follows: "I leave the terms of the lease and the share of the crop, etc., entirely with you, but I do not want the land leased for more than three years. I have so much money in that country now that when I come to think of it I was very foolish and hasty to undertake to do anything with that section, but I did it partly to assist you in your ditch matters, as you cannot keep up your ditch unless you can get some customers." It will be remembered that these letters were written prior to the leasing of the land to plaintiff. In the letter of July 5, 1898, Carr writes as follows: "I am sorry to hear your doleful report about the water in the ditch. I sincerely hope you were mistaken and that the water will hold out; but, of course, you cannot supply the people with water unless you can get it. If you can get water, help my boys all you can on the section." The letters so introduced in evidence may not have been all that the defendant received from Carr in relation to the leasing of his land; but, from the excerpts taken therefrom, we do not think the agent was authorized to furnish water for irrigation on the principal's account. It is true, Carr says, "I leave the terms of the lease and the share of the crop, etc., entirely with you;" but as he had prior thereto expressed his unwillingness to go to the expense of irrigating his land until the grain that might

be grown thereon could be transported from Klamath County by rail, this negatives the idea that the term "etc." authorized the furnishing of water, and no error was committed in refusing to give the instruction requested.

8. The court, instructing the jury on the measure of damages, said:

"In determining the value of such crop, you may take into consideration the value of the crop that would have been produced upon said lands if the same had been irrigated, after deducting all expenses of maturing, harvesting, and marketing said crop, if all these items are shown by the evidence not to exceed $1,185, together with interest at 8 per cent from the date such crop was destroyed."

The plaintiff's counsel concede that the damages sought to be recovered were unliquidated, and that no interest could be recovered thereon until judgment was rendered therefor, and offer to remit $174.44, which the verdict shows that the jury awarded on account of interest. The language quoted is a part of an instruction, to the giving of which the defendant excepted, without calling particular attention to the question of interest. It is probable, if this part of the charge had been particularly challenged, the court would have corrected it. If not, the defendant would have been entitled to his costs in this court on the appeal; but, not having done so, the interest will be remitted without allowing costs to the defendant.

It was suggested at the trial in this court that it was incumbent upon the plaintiff to negative in the complaint the possibility of his securing water for irrigation from other sources after the defendant failed to supply it, but, if this were so, the answer performs that service, and shows that the water could not have been so obtained.

9. Other errors were assigned, but, deeming them unimportant, the judgment will be affirmed, except as to the amount of interest, and the cause remanded, with direc-

tions to the trial court to enter a judgment for the sum of
$726.75, with interest from November 14, 1902.

CONDITIONALLY AFFIRMED.