Argued February 23; affirmed April 5, 1932

## TIMMER *v.* LEONARD ET AL.

(9 P. (2d) 1048)

*Jesse G. Warrington,* of Portland (Thomas R. Mahoney, of Portland, on the brief), for appellant.

*Frank H. Hilton, Arthur M. Dibble* (Malarkey, Dibble & Herbring and Wilbur Henderson and S. J. Bischoff, all of Portland, on the brief), for respondents.

ROSSMAN, J. The complaint, described in appellant's (plaintiff's) brief as being "in the alternative form," is in two counts. The first of these alleges that after the defendants had associated themselves together in a conspiracy for the purpose of cheating and defrauding the plaintiff of a parcel of real property, described in the complaint, they fraudulently represented to him that if he would convey that property to a corporation to be organized and to be known as the City View Golf Links, the defendant Leonard "would pay unto and contribute to the capital assets and capital investment of said corporation sums of money approximating $30,000.00." After alleging that the plaintiff believed this representation, this count avers that the corporation was organized and that he made the requested conveyance. Further, it alleges: "Said corporation had a capital stock of 50 shares without par value, 24 shares of said stock being issued to the plaintiff herein and defendant H. E. Leonard, respectively, and two of said shares being issued to the defendant * * *." Next, these averments allege that "Leonard wholly failed, neglected and refused to contribute said sum of approximately $30,000.00, or any sums whatever or at all, to the capital assets and investment of said corporation," and that "because and on account of said false representations, fraud and deceit of the defendants herein, and each of them, plaintiff has been and now is generally damaged in the sum of $48,165.00." The complaint does not allege the value of the aforementioned parcel of real property nor of the capital stock. It avers, however, that at the time of the aforementioned transaction one Ludwicka Timmer had a life interest in the property, and that, in addition to that outstanding interest, "there were encumbrances on said real property in the sum of approximately $3,500.00."

The second count alleges that the plaintiff owned 24 shares of the corporate stock of the above corporation and that the defendants, pursuant to a conspiracy formed for the purpose of ruining its business and rendering valueless its corporate stock, committed a series of thirteen wrongful acts. The first of these, after realleging the deceitful promise of Leonard to contribute $30,000 to the corporation's assets, charges that the defendants, in writing the minutes of the corporation, fraudulently misstated that agreement. The second specification charges the defendants with "the loss, destruction and falsification" of the agreement just mentioned. The third avers that Leonard, in the performance of his agreement to contribute approximately $30,000 toward the "capital assets of the corporation," contributed "approximately $20,000" only and nothing more after September, 1929. The fourth specification alleges that the defendants advanced "a deceitful claim" after September, 1929, to the effect that Leonard's contribution of approximately $20,000 was "a loan to said corporation instead of a part of the capital investment." These four averments are followed with nine others which charge that the conspirators, being actuated by fraudulent purposes, made deceitful promises and thereby (1) induced the three directors, of whom the plaintiff was one, "to incur debts and obligations on open account" on behalf of the corporation in excess of $10,000; (2) that similar means induced the directors to execute a mortgage in the sum of $44,000 in favor of the defendant Combs upon his promise to advance to the corporation $44,000; (3) that the plaintiff was induced to assign to Combs his corporate stock upon a "deceitful promise" of Combs and Leonard "that they would procure for said City View Golf Links certain sums of

money approximating $12,000.00 as capital assets with which to complete the construction of said golf course''; (4) that Combs failed to advance the aforementioned sum of $44,000; (5) that the $44,000 mortgage, the $10,000 of debts and the assertion of Leonard that the corporation owed him $20,000 ''precipitated the insolvency of the corporation''; (6) that one Miller was persuaded by the conspirators ''to buy outstanding liabilities against said corporation in the sum of $1,325.00, to institute action against it and obtain the issuance of a writ of attachment''; (7) that the defendant Alsea-Pacific Company purchased alleged debts outstanding against the corporation, filed suit, and procured the appointment of a receiver for the corporation's assets; (8) that the defendant Combs sought to obtain judgment against the corporation in the sum of $22,400 and to foreclose upon the corporate stock assigned to him by the plaintiff; (9) that the conspirators caused the corporation to be adjudged a bankrupt. This count closes with the averment ''that because and on account of said conspiracy, design or scheme of said defendants and each of them, wilfully and maliciously to ruin, destroy and encumber the business and assets of said corporation, * * * and to render valueless and worthless the corporate stock * * * this plaintiff's corporate stock in said corporation has been and now is rendered entirely and wholly valueless and worthless, and plaintiff has been and now is damaged on account thereof in the sum of $48,165.00.''

The complaint nowhere alleges the value of the plaintiff's 24 shares of stock, nor does the second count mention the real property described in the first count nor in any manner intimate the value thereof. To the complaint the defendants interposed a demurrer which charged, among other matters, that the complaint failed

to state facts sufficient to constitute a cause of action. After the demurrer had been sustained and the plaintiff had failed to tender a further pleading within the time allowed by the statutes of the state and the rules and order of the circuit court, the court dismissed the action. The plaintiff has appealed.

■ It will be observed that the property which the plaintiff conveyed to the corporation was encumbered and that the complaint nowhere avers its value. Likewise, the complaint does not expressly allege that the property was conveyed to the corporation in payment of 24 shares of its stock, nor does it aver that the real property was considered the equivalent in value of these shares. The allegation that "the plaintiff has been and now is generally damaged in the sum of $48,165.00" cannot be considered as an allegation that that sum of money represented the value of the realty for reasons which we believe are evident, and for another which we shall now undertake to state. After the plaintiff had conveyed his interest in the real property to the corporation and Leonard had failed to pay to it his promised contribution of $30,000, the plaintiff was somehow damaged to the extent of $48,165, if we may believe the first count. He now had 24 shares of stock and the corporation had his interest in the realty. The second count begins with an averment of plaintiff's ownership of these 24 shares of stock, and then sets forth a series of 13 wrongs upon the corporation which finally resulted in a decree adjudging it a bankrupt. One of these is the same wrong which constituted the sole foundation of the first count, that is, Leonard's fraudulent promise to contribute to the corporation's capital assets, $30,000, and his failure to do so. After all of these 13 wrongs had been committed and plaintiff's 24 shares of stock had been ren-

dered worthless, plaintiff's damages still remained only $48,165. His brief expressly declares that the plaintiff "seeks but one recovery in the sum of $48,-165.00." Evidently the stock was entirely valueless at the very inception of the corporation. If this is true, then the real property which the plaintiff had conveyed to the corporation must also have been without value. If the plaintiff has truthfully stated the facts the above conclusion is warranted. If he has misstated them, he alone is to blame. The capacity of the plaintiff to misstate facts is manifested in his two averments concerning Leonard's alleged promise to contribute "approximately $30,000.00 toward the capital assets" of the corporation. In the first count he accuses Leonard of having "wholly failed, neglected and refused to contribute said sum of approximately $30,000.00 or any sums whatever or at all." The second count, after referring to the same promise, alleges that Leonard contributed "approximately $20,000.00" toward performance of his promise. Under these circumstances, we feel justified in scrutinizing with care the language which alleges damages.

The plaintiff had an abundance of opportunities to allege the value of his real property and of the 24 shares of stock. The pleading now under attack is the third amended one, and, after the demurrer had been sustained to it, a fourth amended complaint appeared, which is also before us. All except the fourth, according to the appellant's brief, were attacked by numerous motions, as well as by demurrers. Yet neither the third amended complaint nor the fourth, which the court declined to receive, allege the value of the real property or of the corporate stock. The allegation which avers that Combs obtained plaintiff's 24 shares of stock for the purpose of obtaining some

contributions toward the capital assets of the corporation does not, of necessity, indicate that the stock possessed value. Under the circumstances above reviewed, and in the absence of any averment indicating that the real property or the stock possessed market value, we feel justified in assuming that it did not.

■ Damages are not obtainable in fraud actions unless an injury results from the deceit. The right invoked by the plaintiff is not one of protection against being subjected to misleading remarks, but the right not to be deceived to his damage: *Martin v. Moreland*, 93 Or. 61 (174 P. 722, 180 P. 933) ; *Salisbury v. Goddard*, 79 Or. 593 (156 P. 261) ; *Martin v. Eagle Development Co.*, 41 Or. 448 (69 P. 216) ; *Caples v. Steel*, 7 Or. 491. See generally, Clark on Code Pleading, p. 226, and 26 C. J., Fraud, p. 1167. The pleading must not only allege damage, but it must also appear that the damage claimed was sustained by reason of the fraud. In other words, it must appear from the pleading that the relationship of cause and effect existed between the alleged fraud and the damages sought: *Woodson v. Winchester*, 16 Cal. App. 472 (117 P. 565) ; *Fillmore, Etc., Bank v. Kelly*, 62 Utah 514 (220 P. 1064) ; *Schlesinger v. O'Rourke*, 45 R. I. 326 (121 Atl. 214) ; *Carrington v. Omaha Life Assn.*, 59 Neb. 116 (80 N. W. 491). Since fraud is a disfavored action, the authorities require the allegations to be made with a great degree of particularity (Clark on Code Pleading, p. 214) in support of such an action.

The allegation closing the first count which alleges that on account of the false representations the plaintiff was damaged in the sum of $48,165, and the averment closing the second count which alleges that on account of the fraudulent scheme of the defendants to

render valueless the stock of the corporation, the plaintiff was damaged in the sum of $48,165, are, in our opinion, nothing more than conclusions of law: *Solomon v. Kenner,* 121 Or. 407 (255 P. 471), and 49 C. J., Pleading, p. 77, § 67. While such averments could support a pleading if accompanied by sustaining facts, yet, under the circumstances reviewed above, we believe that they are nothing more than conclusions of law.

It follows that, in our opinion, the complaint fails to state facts sufficient to constitute a cause of action.

■ The plaintiff also complains because the circuit court overruled his motion for an order permitting him to file a fourth amended complaint. He relies upon section 1-905, Oregon Code 1930, which provides that the court may in its discretion, after passing upon a demurrer, allow the unsuccessful party to plead over. The plaintiff did not tender his fourth amended complaint until after the time fixed by statute, the court's order and the rules of the circuit court had expired. Apparently, he offered no explanation for his tardiness. None has been called to our attention. We find nothing in the record which tends to show an abuse of the circuit court's discretion and, accordingly, conclude that this contention is without merit.

For reasons which are self-evident, the circuit court should not have dismissed this action with prejudice. Its order of dismissal will be modified to that extent; in all other respects it will be affirmed.

BEAN, C. J., RAND and KELLY, JJ., concur.