THE KENNEWEG CO. vs. WM. W. FINNEY ET AL.

*Letter Held Not to be a Guaranty.*

Brokers who had negotiated a contract of sale wrote to the buyer, in reply
to an inquiry concerning the responsibility of the seller, saying: "We
are very much interested in seeing that you get the goods and from the
position we occupy we would say that the contract is good and that we
will look after the same, both to your interest and for our own." *Held*,
that this letter does not constitute a guaranty by the brokers of per-
formance of the contract by the seller.


Appeal from the Circuit Court for Baltimore County
(BURKE, J.)

The cause was argued before McSHERRY, C. J., FOWLER,
BRISCOE, PAGE, BOYD, PEARCE, SCHMUCKER and JONES, JJ.

*D. G. McIntosh* (with whom was *S. A. Williams* on the
brief), for the appellant.

*Vernon Cook* and *Stuart S. Janney* (with whom were *Gans
& Haman* on the brief), for the appellees.

FOWLER, J., delivered the opinion of the Court.

The controversy in this case arose out of the following facts:
The Kenneweg Company, a corporation, is engaged in the
grocery business at Cumberland, and Finney & Robinson are
merchandise brokers at Belair.   On the 2nd April, 1901, the
latter wrote to the former that one of the small packers in
Harford County wished to sell a thousand cases No. 3 Stand-
ard Tomatoes at 67 ½ cents per dozen net.   On the next day
the Kenneweg Company wired an acceptance of this offer and
the same day Finney & Robinson sent the sales contract signed
by them as brokers and accepted by the seller, J. Barnes
Bailey, agent.   Having thus, for the first time, ascertained the

name of the seller, the purchasers appear to have at once commenced inquiries in regard to his financial standing, for on the 4th April they wrote to Finney & Robinson that they had noticed that he had no rating and that in fact he was not mentioned in R. G. Dun's book.   In concluding this letter they said:   "What measure of responsibility attaches to this contract?   We desire first to be assured that we will get the goods, then we intend to sell against the contract to our own trade, but must first have *positive evidence* that we will secure the goods."   The answer of Finney & Robinson to this communication is as follows:

April 5, 1901.

Kenneweg Co.,
    Cumberland, Md.

Yours of the 4th inst. received and noted.   You are right in being particular in regard to contracts signed with agents, but in this particular instance Mr. Bailey is agent for his wife. We have sold them cans and are taking a bill of sale covering them.   We are very much interested in seeing that you get the goods, and from the position we occupy we would say that the contract is good, and that we will look after the same, both to your interest and for our own.   We have sold Mr. Bailey's goods for sometime back.   He is a small packer and we have always found his product above the ordinary Std. Tomato."   This is the letter which Kenneweg Co. have made the basis of their claim in this suit.

There was some further correspondence between the same parties when on October 14th the Kenneweg Co. was informed that Bailey, the seller, would not be able to deliver all the goods he had agreed to sell, and on the 24th of the same month Finney & Robinson enclosed to the purchaser a letter from the seller in which the latter gave his reasons for having failed to fulfill his contract, and they in their letter state that Bailey's whole pack amounted to only 1,200, while he had anticipated a crop of 5,000 or 6,000 cases.   At the same time they informed the purchaser that they had taken 500 cases of goods against their bill of sale which they had men-

tioned in their letter of April 5th. Without a more particular statement of the facts it is sufficient, from the view we have taken, to say that the Kenneweg Company did not get any of the goods which Bailey agent sold to it, and it brought this suit in the Circuit Court for Harford County against Finney & Robinson, the brokers who negotiated the sale, to recover damages sustained by reason of the breach of the contract of sale by Bailey. The case was subsequently removed to the Circuit Court for Baltimore County and there tried. The *narr.* contains the common money counts and one special count. The latter is based on the allegation that the defendants in their letter of April 5th, assured the plaintiffs that the goods would be duly delivered to the plaintiff; and that they agreed that in consideration of the plaintiff accepting the offer of sale by Bailey they would guaranty the contract. The defendants pleaded the general issue, and the verdict being against the plaintiff, it has appealed.

At the trial of the case below, at the conclusion of the plaintiffs' testimony, the defendant offered three prayers asking the Court to withdraw the case from the jury—all of them being based on the theory that there was no legally sufficient evidence in the case to show any contract between the plaintiff and defendants. These prayers were granted, and the correctness of this ruling constitutes the only exception presented by this record.

As we have already seen the plaintiff's contention is that by their letter of April 5th, 1901, the defendants guaranteed that the contract was good and that the plaintiffs would get the goods in accordance therewith. In order to support the allegation of its *narr.* in this respect the plaintiff relies, and relies alone, on the letter just mentioned, and hence if that letter, properly construed, does not fairly amount to a guaranty the plaintiff must fail. We have already transcribed it in the former part of this opinion. The portion relied on by the plaintiffs is in these words: "We are very much interested in seeing you get the goods, and from the position we occupy, we would say that the contract is good, and that we will look after the same both to your interest and for our own."

In the first place is it conceivable, without regard to authority or to any of the circumstances of the transaction, that by such language the defendant intended to give a guaranty or that the plaintiff at the time understood they were so doing. If the plaintiff required or expected a guaranty it was certainly very easily satisfied, if it accepted, as it did, without comment or objection language which amounts to nothing more than the mere expression of opinion.   It does not seem to us that the language we have just quoted amounts to anything more. It is not said that the contract is good, but from the position they occupy they are able to express the opinion that it is good or would say it is good, &c.   How easy it would have been, as was said in *Hatch* v. *Antrim*, 51 Ill. 106, if a guaranty was intended, to have said so.   But not only does the language fail to show it was the intention of the defendants to give a guaranty, but the conduct of the plaintiff's officers does not indicate they at first thought so themselves, for when informed that the goods would not be delivered instead of relying on the guarantee they write to the defendants that the plaintiff was unable to say what it can do to satisfy the parties to whom the goods had been resold.   Not a word relative to the liability of the defendants when on 16th of October the plaintiff wrote them saying, "We are sorry, indeed, to learn that Mr. Bailey will be unable to fill the entire amount of our contract   *   *   *   You will please advise Mr. Bailey that we will insist on his filling the entire order."   If there was, or if the plaintiff believed there was, any liability on defendant's part, it would have been most natural to remind them of it when this letter was written.   In the case of *Russell* v. *Clark's Exrs.*, 7 Cranch, 90, CHIEF JUSTICE MARSHALL said : "The law will subject a man, having no interest in the transaction, to pay the debt of another, only when his undertaking manifests a clear intention to bind himself for that debt.   Words of doubtful import ought not, it is conceived, to receive that construction.   It is the duty of the individual who contracts with one man on the credit of another, not to trust to ambiguous phrases and strained constructions, but to require an

explicit and plain declaration of the obligation he is about to assume." In *Brandt on Suretyship and Guaranty*, sec. 94, it is said, while it is the general and uniform rule that both sureties and guarantors are favorites of the law and have a right to stand on the strict terms of their obligations, yet in the construction of the contract of guaranty, as well as of every other contract, the true question is, "What was the intention of the parties as disclosed by the instrument read in the light of the surrounding circumstances." The same rule was adopted by this Court in *Hooper* v. *Hooper*, 81 Md. 169; opinion by the present Chief Judge. Applying this well settled rule of construction we are unable to find anything either in letter alone or in connection with the circumstances accompanying the transaction which would indicate that either party understood or intended it to be a contract of guaranty.

In *Thomas* v. *Wright*, 98 N. C. 272, the letter relied on as a guarantee was as follows : "I have no fear in becoming responsible for the goods, but dislike to be troubled with the settlement of other merchant's bills.  *  *  *  I see no reason why you should doubt him and ask for security. I recommend him as being a safe man to sell to and I think you ought to allow him credit. His credit is good here, as I furnish him with all his groceries and supplies. I hope you will ship his goods at once  *  *  *  I will look to your interest in this matter." SMITH, C. J., in delivering the opinion of the Court said, "We are disposed to concur in the opinion that the letter is not itself a guaranty, and is not made such in law by the plaintiff's communication of his own misconstruction of its import." And so in *Eaton* v. *Mayo*, 118 Mass. 141, it was held that the following letter was not a guaranty: "Let M have what goods he may want on four months and he will pay as usual." In this connection reference may be had to *Switzer* v. *Baker*, 95 Cal. 539; *Einstein* v. *Marshall*, 58 Ala. 153; *Baker* v. *Trotter*, 73 Ala. 277, and to the instances given and cases cited in 1 *Brandt*, secs. 102 and 103, to show when a writing does not amount to a guaranty.

If there was no contract of guaranty, as we have said there

was none, it will be unnecessary to consider any other questions discussed at the hearing—and it follows that the judgment appealed from must be affirmed.

*Judgment affirmed with costs.*

(Decided December 4th, 1903.)