### TAYLOR v. FIRST STATE BANK OF HAWLEY et al. (No. 8177.)

(Court of Civil Appeals of Texas. Ft. Worth. May 1, 1915. On Motion for Rehearing, July 3, 1915.)

1. FRAUD ☞58 — REPRESENTATION AS TO CREDIT—GOOD FAITH—SUFFICIENCY OF EVIDENCE.

In an action against the cashier of a bank for having fraudulently misrepresented the financial standing of a third party, evidence *held* sufficient to show that the representation by letter was made in good faith.

[Ed. Note.—For other cases, see Fraud, Cent. Dig. §§ 55–59; Dec. Dig. ☞58.]

2. GUARANTY ☞4—LETTER—CONSTRUCTION.

In determining whether a letter as to the credit of a third party constitutes a guaranty, the instrument will be construed as a whole.

[Ed. Note.—For other cases, see Guaranty, Cent. Dig. §§ 3–6; Dec. Dig. ☞4.]

3. GUARANTY ☞4—LETTER AS TO THIRD PARTY'S CREDIT.

Where the defendant, assistant cashier of a bank, in response to a telegram to the bank inquiring as to the financial responsibility of a corporation, answered by letter that, as the manager of the company resided elsewhere, he could not be communicated with, and the bank was not in a position to reply to the inquiry as to what arrangements he had made for the protection of a draft, but that the writer personally had extended him a line of credit sufficient to carry on his business, and knew of no reason at the time why drafts on him should not be promptly protected, it being printed on the bottom of such letter in red ink that any statement as to the responsibility of any person, firm, or corporation was matter of opinion only, given solely from courtesy, and without responsibility or prejudice to the bank or its officers, such letter was not a guaranty obligating defendant to pay the draft on the corporation's failure to do so, since defendant did not make the distinct promise to pay the debt of another required by

law for a guaranty, as a contract of guaranty exists only where the writing by its terms evidences with reasonable clearness the intent of the party sought to be charged to become bound to pay the debt.

[Ed. Note.—For other cases, see Guaranty, Cent. Dig. §§ 3–6; Dec. Dig. ⬅4.]

4. GUARANTY ⬅27—PRINCIPAL AND SURETY ⬅59—CONTRACT—CONSTRUCTION.

The rule that the contract of a guarantor or surety is to be strictly construed in his favor is applied only after the legal scope of its terms is determined by the same rule of construction applied to other writings.

[Ed. Note.—For other cases, see Guaranty, Cent. Dig. § 28; Dec. Dig. ⬅27; Principal and Surety, Cent. Dig. §§ 103, 103½; Dec. Dig. ⬅59.]

5. FRAUD ⬅9—ELEMENTS.

To charge a party for fraud in having made a false statement in good faith, such party must have made a false statement of some material fact, which, being relied on, misled another to his prejudice.

[Ed. Note.—For other cases, see Fraud, Cent. Dig. § 8; Dec. Dig. ⬅9.]

On Motion for Rehearing.

6. APPEAL AND ERROR ⬅832—HARMLESS ERROR—DECISION ON ERRONEOUS GROUND.

Where the court on appeal was in error in reversing the case on a theory not presented by the pleadings or the charge, and such court also held that the judgment could not be supported on the issue on which the case was tried, the error was harmless.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3215–3228; Dec. Dig. ⬅832.]

7. APPEAL AND ERROR ⬅832 — ERRONEOUS CONSIDERATION OF ASSIGNMENT OF ERROR—WAIVER.

Where, on the original hearing, the appellee did not object to consideration of an assignment of error that the evidence on an issue was insufficient to sustain the verdict, such appellee could not object to consideration of the assignment on motion for rehearing.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3215–3228; Dec. Dig. ⬅832.]

Appeal from Taylor County Court; E. M. Overshiner, Judge.

Action by the First State Bank of Hawley and others against Paul G. Taylor and others. Judgment for plaintiffs, and the named defendant appeals. Reversed and rendered for appellant.

Geo. F. Howard, of Houston, and Eugene De Bogory, of Abilene, for appellant. J. W. Boynton, of Anson, for appellees.

CONNER, C. J. This is an appeal by Paul G. Taylor from a judgment against him in the sum of $454.38 in favor of the First State Bank of Hawley. The judgment was also in favor of the bank against A. E. Graham and S. G. Meng. As to these latter parties, however, no complaint is made, and we, therefore, need not notice the proceedings relating to them.

The circumstances upon which the bank based its claim against the appellant Paul G. Taylor are substantially as follows: Gra-

ham was engaged in the business of purchasing peanuts from farmers in the vicinity of Hawley, Jones county, under an agreement with Meng, who was doing business in Harris county, Tex., under the trade name of the Lone Star Peanut Company, that Graham would ship the peanuts from Hawley, draw drafts upon Meng at the agreed prices, attaching bills of lading thereto, which drafts were to be paid by Meng upon the receipt of the peanuts at their specified destination in Harris county. Pursuant to this plan, Graham had purchased several cars of peanuts, secured the bills of lading "to shipper's order," and attached thereto drafts, and sought to have such drafts cashed at Hawley by the appellee bank. The appellee bank was willing to do this; but desiring assurance that the drafts would be paid by the Lone Star Peanut Company, as had been agreed between Meng and Graham, sent a telegram to the South Texas Commercial National Bank of Houston, Tex., inquiring as to the financial responsibility of the Lone Star Peanut Company. In answer to this telegram the Hawley Bank received the following letter written by Paul G. Taylor, which we here set out:

"Houston, Texas, 11—8—1913.

"First State Bank, Hawley, Texas—Gentlemen: We are to-day in receipt of the following telegram: 'Lone Star Peanut Co. draft good with B/L attached for 5 or 6 cars peanuts.' Which, being received after close of business, we are taking the liberty of replying thereto by mail instead of wiring you. We presume your inquiry is intended to inquire as to whether or not we would protect draft with B/L attached for 5 or 6 cars of peanuts. As Mr. Meng, the manager of the company above mentioned, resides at Katy, Tex., and we are unable to communicate with him to-day, we are not in position to reply to your inquiry, as we do not know what arrangements he has made for the protection of the draft.

"The writer, personally, however, has extended Mr. Meng a line of credit sufficient to carry on his business, and I know of no reason, at this time, why drafts on him could not be promptly protected.

"Yours very truly,
"Paul G. Taylor, Asst. Cashier."

On the bottom of said letter is printed the following in red ink:

"Confidential: This information is furnished by request, and any statement made on the part of this bank or any of its officers, as to the responsibility or standing of any person, firm, or corporation, or the value of any property or securities, is a matter of opinion only, and given as such solely from courtesy and without responsibility or prejudice to this bank or its officers."

Upon the receipt of this letter the appellee bank, after certain proceedings not necessary to notice, received and cashed Graham's drafts on the Lone Star Peanut Company aggregating several thousand dollars. But the drafts when forwarded to Houston for collection were refused payment and protested. The Hawley Bank thereupon sent an agent to Harris county, took charge of the

peanuts and sold them, and applied the proceeds to the payment of the Graham drafts; but the drafts, plus the expenses of the sale, protest fees, etc., exceeded the amount for which the peanuts sold in the sum of $454.-38, to recover which this suit was instituted, as stated in the beginning.

[1] Under the undisputed evidence and appellee's admission in the lower court, the liability of the appellant, Paul G. Taylor, rests alone upon the letter written by him hereinbefore quoted. Appellee alleged that it had been fraudulently written; that it was false, and that it, in legal effect, constitutes a guaranty on the part of Paul G. Taylor of the payment of the drafts drawn under the circumstances we have stated. Paul G. Taylor testified by deposition, in substance, that previous to the date of his letter he had extended a line of credit to Meng secured by collateral security which varied several times during the life of the indebtedness from $1,200 to $3,665; that the only business relation between Meng and himself was that of creditor and debtor; that he received no compensation in any manner for the letter, and that it was written "purely out of courtesy"; that he had at no time a contract, verbal or otherwise, with Meng in which he had agreed to make advances other than a personal loan upon security offered, as before mentioned; that at the time of the letter he did not know that Meng was not personally able to take care of his own obligations or drafts, or that he was relying entirely upon him (Taylor) to furnish him funds with which to do an unlimited volume of business; that he was not aware that the First State Bank of Hawley was contemplating the actual cashing of drafts on the Lone Star Peanut Company, but supposed that any drafts of this nature would be handled, as is a more frequent custom of banks, for collection only. In answer to interrogatories he said, among other things, that he had no record that would enable him to state how long Meng and the witness had been negotiating with each other at the time the letter was written, but believed the original loan to Meng to have been dated several months prior to the writing of the letter, during which period he saw very little of Meng and knew very little concerning the details of his affairs; that he could not give the dates of various loans made to Meng, nor did he have any means at his command which would enable him to give even the approximate dates of the different loans.

[2-4] If there is any substantial contradiction of the testimony of appellant, as above stated, our attention has not been called to it, and we think it may be safely said that the undisputed facts show that the letter was written in good faith. Can the letter then be said to constitute any such guaranty or assurance of the payment of the Graham drafts as will support the judgment in this case? We think not. The letter, of course, is to be construed as a whole. The information was clearly to the effect that the bank to which appellee's telegram had been addressed would not undertake to protect the drafts, and was without information of what arrangements, if any, Meng had made to do so. The letter also conveyed the information that Mr. Meng resided at Katy, Tex., and that immediate communication could not be had with him; and the further statement of the writer that he had "extended Mr. Meng a line of credit sufficient to carry on his business," and that he knew "of no reason at this time why drafts on him could not be promptly protected," seems clearly to be in the nature of a passing statement, intended merely to convey to the Hawley Bank such knowledge or information as was then in the possession of the writer. Especially is this true in view of the statement in red ink following the letter, and marked "Confidential," to the effect that the information was furnished solely from courtesy, and without responsibility or prejudice to the bank or its officers. The letter falls far short, we think, of that character of distinct guaranty or promise to pay the debt of another which is required by the law. See Hughes v. Peper Tobacco Warehouse Co., 139 N. C. 158, 51 S. E. 793, 1 L. R. A. (N. S.) 305, and cases cited in note, 111 Am. St. Rep. 778; Hill Merc. Co. v. Rotan Gro. Co., 127 S. W. 1080; American Surety Co. v. Loen, 49 Tex. Civ. App. 98, 107 S. W. 938.

While the rule that the contract of the guarantor or surety is to be strictly construed in his favor is applied only after the legal scope or effect of the terms used is determined by an application of the same rules of construction that are to be applied in the determination of the legal effect of any other writing (see 5 Elliott on Contracts, § 3941), yet, as in the case of other contracts, the minds of the parties must meet in the same sense on the same proposition. The contract of writing, by its terms, must, with at least reasonable clearness, evidence an intent on the part of a party sought to be charged to become bound to pay the debt, in case of default on the part of the primary obligor. In the North Carolina case cited the following letter was relied upon as constituting a guaranty:

"St. Louis, Mo., Mar. 19, 1897.
"Messrs. W. T. Hughes & Co., Louisburg, N. C.—Gentlemen: Your letter of the 11th inst., making inquiry about the general standing of J. E. M. Walker, received. We regard him as a perfectly reliable, trustworthy gentleman, with whom your samples and sales would be entirely safe, and doubly so, as all tobacco of yours that might be shipped would come direct to the Peper Tobacco Warehouse Co., and the payment of all such tobacco would be made by us to you for all sales. Yours truly,
"Nicholas N. Bell, Manager.
"Per Hall."

The court said:
"We do not think that this letter constituted a guaranty by the defendant to Hughes & Co., of payment of all tobacco which they would ship

J. E. M. Walker. A guaranty is a contract—an aggregatio mentium. This letter is, on its face, merely a response to a letter of inquiry to ascertain the general standing of J. E. M. Walker, and not to a request for them to guarantee purchases made by him. The reply contains what was asked for—information—and nothing more."

In Switzer v. Baker, 95 Cal. 539, 30 Pac. 761, a person contemplating work for a lessee wrote to the lessor inquiring whether he would be paid for his work. The lessor answered: "You may rest assured that you will get your pay for all work done." It was held that a guaranty could not be inferred from the letter.

In Kenneweg Co. v. Finney, 98 Md. 118, 56 Atl. 482, certain brokers negotiated a sale between other parties. The buyers, after the contract had been concluded, wrote to the brokers concerning the responsibility of the seller. The brokers replied:

"We are very much interested in seeing you get the goods, and, from the position we occupy, we would say that the contract is good, and that we will look after the same, both to your interest and for our own."

It was held that the letter did not amount to a guaranty of performance.

So, in Thomas v. Wright, 98 N. C. 272, 3 S. E. 487, the following letter, written in answer to an inquiry as to the financial standing of an applicant for credit, was held not to constitute a guaranty:

"I have no fear in becoming responsible for the goods, but dislike to be troubled with the settlement of other merchants' bills. I know he has bought a great many liquors from you, and has paid you up promptly. I see no reason why you should doubt him and ask for security. I recommend him as being a safe man to sell to, and I think you ought to allow him some credit, as he has never deceived you. His credit is good here, as I furnish him all his groceries and supplies. I hope you will ship his goods at once, as I see no good reason why you should not. I will look to your interest in this matter."

[5] These cases, we think, support the conclusion already stated, that in our opinion the letter in this case written by appellant does not support the judgment against him on the theory of a guaranty. If it be said that the plaintiff's cause of action is also predicated upon fraud, then it must be held that there is no actual fraud, at least, inasmuch, as before stated, it appears that appellant's letter was written in good faith. If based on fraud in a legal sense arising from a false statement, though made in good faith, it must appear that the party sought to be charged made a statement of some material fact shown to be false, but which, being relied upon, misled another to his prejudice. In such cases the falsity of the fact is an essential element, which failing here, there can be no liability on this ground. So that we conclude that the judgment against appellant must be reversed and here rendered in his favor. The judgment against A. E. Graham and S. G. Meng is not disturbed.

## On Motion for Rehearing.

[6] Appellee very earnestly insists that we erroneously disposed of this case on the theory that the letter of Paul G. Taylor did not amount to a warranty, when no such theory was presented in the plaintiff's pleading or in the charge upon which the case was submitted, the contention being that, as alleged and as submitted, the case is one of fraud only. While it is true, strictly speaking, that as made by the pleadings and as submitted the case seems to be one of fraud, yet the letter of appellant was declared upon, and there was a contention in appellant's brief that the letter was relied upon, as a warranty, and this contention was not specifically denied. We therefore discussed the question as a possible basis for an affirmance of the judgment. But if we were in error, as appellee now urges, in determining that the letter did not constitute a warranty, the error is harmless, inasmuch as we also held that the judgment could not be supported on the issue of fraud.

[7] Appellee also insists that we erred in the conclusion that there was no evidence of fraud, and in here rendering the judgment, for the reason that appellant on the trial below made no objection to the court's charge submitting the issue of fraud, and, on the contrary, requested a special charge on the subject, thus, as is contended, waiving any right on appeal to question the sufficiency of the evidence to sustain the verdict of the jury in appellee's favor on that issue. On original hearing appellee made no such objection to a consideration of the assignments of error in this case, at least one of which directly attacked the judgment for want of sufficient evidence to sustain it on the issue of fraud, and it is now too late to do so. See opinion on rehearing in Southern Gas & Gasoline Engine Co. v. Adams & Peters, 169 S. W. 1149.

We think the motion for rehearing must be overruled.