No. 18,476.

THE YATES CENTER NATIONAL BANK, *Appellant*, v. A. N. ALLEN et al., *Appellees*.

### SYLLABUS BY THE COURT.

LETTERS OF RECOMMENDATION — *Create no Liability unless Fraudulently Made.* A petition charging liability upon the writer of a letter to the addressee, who extended credit in reliance upon it, which does not allege that the statements contained in the letter were false to the knowledge of the writer or were otherwise fraudulently made, does not state a cause of action. This is the letter:

"THE FIRST NATIONAL BANK,
CHANUTE, KANSAS.

1-19-09.

"*Mr. C. G. Ricker, V. P.,*
*Yates Center National Bank,*
*Yates Center, Kan.*

"DEAR SIR—This letter will introduce to you Mr. Cecil C. Kennedy, who has just moved to your City, to engage in the Confectionery business. Mr. Kennedy is a son of Mr. D. M. Kennedy, our Vice-President, and a boy whom I have known from infancy, he is honest and upright in every particular, as well as energetic and attentive to business. If you can be of any assistance to him at any time in any way, his father as well as myself will very much appreciate the same.
Yours truly,
(Signed)                    A. N. ALLEN, *Cashier*."

Appeal from Neosho district court; JAMES W. FINLEY, judge. Opinion filed June 6, 1914. Affirmed.

*G. H. Lamb,* and *W. E. Hogueland,* both of Yates Center, for the appellant; *H. P. Farrelly,* and *T. R. Evans,* both of Chanute, of counsel.

*John J. Jones, James A. Allen,* both of Chanute, and *James W. Reid,* of Parsons, for the appellees.

The opinion of the court was delivered by

BENSON, J.: This is an action to recover for losses caused by giving credit to the bearer of the following letter:

"THE FIRST NATIONAL BANK,
CHANUTE, KANSAS.

1-19-09.

"*Mr. C. G. Ricker, V. P.,*
*Yates Center National Bank,*
*Yates Center, Kan.*

"DEAR SIR—This letter will introduce to you Mr. Cecil C. Kennedy, who has just moved to your City, to engage in the Confectionery business. Mr. Kennedy is a son of Mr. D. M. Kennedy, our Vice-President, and a boy whom I have known from infancy, he is honest and upright in every particular, as well as energetic and attentive to business. If you can be of any assistance to him at any time in any way, his father as well as myself will very much appreciate the same.

Yours truly,
(Signed)        A. N. ALLEN, *Cashier.*"

The petition alleges that the defendant, D. M. Kennedy, the father of Cecil C. Kennedy, is the vice president and manager of the First National Bank of Chanute, of which the defendant A. N. Allen is cashier; that Cecil C. Kennedy had located in Yates Center, where he was engaged in the confectionery business, and that at the time the son so located the father induced the cashier to write the letter quoted above.

It was alleged that after receiving the letter Mr. Ricker, acting for the plaintiff bank, loaned to Cecil C. Kennedy various sums of money, aggregating $1538.22; that said Cecil C. Kennedy was not honest, nor upright, nor energetic, nor attentive to business, but was dishonest and wholly unreliable; that he falsely represented that he had a stock of goods to the value of $2500, when in truth he was insolvent and a bankrupt and the stock was not worth over $600 or $700, and his wholesale bills were not fully paid, and only a few were

paid; that he wanted the money borrowed to pay his bills, and had applied it to that purpose, but had not done so.

In *Russell v. Clark's Executors*, 11 U. S. (7 Cranch) 69, the question of liability upon the following letter was considered:

"Our friends, Messrs. Robert Murray & Co. merchants in New York, having determined to enter largely into the purchase of rice, and other articles of your produce in Charleston, but being entire strangers there, they have applied to us for letters of introduction to our friend. In consequence of which, we do ourselves the pleasure of introducing them to your correspondence as a house on whose integrity and punctuality the utmost dependence may be placed; they will write you the nature of their intentions, and you may be assured of their complying fully with any contracts or engagements they may enter into with you. The friendship we have for these gentlemen induces us to wish you will render them every service in your power; at the same time, we flatter ourselves the correspondence will prove a mutual benefit.

"We are, with sentiments of esteem, etc." (p. 69.)

It appears that this letter was followed by another, saying: "We have now to request that you will render them every assistance in your power." (p. 70.) Credit was given to Murray & Co. by the addressees of this letter, and the action was to charge liability upon the writers. In the course of the opinion in that case. Chief Justice Marshall said:

"The law will subject a man, having no interest in the transaction, to pay the debt of another, only when his undertaking manifests a clear intention to bind himself for that debt. Words of doubtful import ought not, it is conceived, to receive that construction. It is the duty of the individual, who contracts with one man on the credit of another, not to trust to ambiguous phrases and strained constructions, but to require an explicit and plain declaration of the obligation he is about to assume. In their letter of the 20th, Clark and Nightingale indicate no intention to take any responsibility on

themselves, but say that Mr. Russell may be assured Robert Murray & Co. will comply fully with their engagements. . . . It is certain that merchants are in the habit of recommending correspondents to each other without meaning to become sureties for the person recommended; and that, generally speaking, such acts are deemed advantageous to the person to whom the party is introduced, as well as to him who obtains the recommendation. . . . In such a case it is certainly incautious and indiscreet to use terms which imply absolute and positive knowledge. It may, perhaps, be admitted that, in such a case, fraud may be presumed on slighter evidence than would be required in a case where a letter was written with more circumspection. Yet, even in such a case, where the communication is honestly made, and the party making it has no interest in the transaction, he has never been declared to be responsible for its actual verity." (pp. 90, 91, 93.)

Further quotations are not deemed necessary. Fraud was charged in that case, but it was not proven, and the decision was grounded upon the language of the letter.

In *Hardy v. Pool*, 41 N. C. 28, a letter was considered which recited: "I am satisfied you will be safe in selling him any amount he may see proper to purchase. From my long acquaintance with him I do not hesitate to say, that he is as punctual a man as any I know." (p. 28.) Goods were sold on the faith of the letter, and in an action against the writers the court, by Ruffin, C. J., said:

"It is plainly not a letter of credit, in which Freshwater undertakes anything for Wright, but a representation merely of his opinion of the other's solvency and punctuality. It is not an engagement at all; and, indeed, as there is no intimation of *mala fides* on his part, he must be taken to believe what he said, and, therefore, no recovery could have been made from Freshwater on it in any form." (p. 30.)

A specific recommendation of credit was held in-

sufficient in *Lord v. Colley et al.,* 6 N. H. 99.   This is the letter:

"This may certify, that Josiah Hobbs, Junior, is competent to pay the sum of $100 within any reasonable term of time, and we hereby recommend him as possessing credit to that extent."   (p. 99.)

It was said in the opinion:

"It is well settled that an action of this kind can not be sustained, unless the recommendation be both false and fraudulent.   Recommendations are generally understood to be nothing more than the opinion of those who give them, resting upon common reputation, and the apparent circumstances of the individual recommended, and not upon any minute examination of his affairs.   And it is well known that men, who are apparently in good credit, and in easy circumstances, turn out to be, in reality, insolvent.   It is, therefore, very obvious that a recommendation ought not to be persumed to be fraudulent merely because it happens not to be true."   (p. 102.)

It is urged in the argument that the statement that the writer of the letter had known the boy from infancy, and that he was honest and attentive to business, was the positive assertion of facts rather than the expression of an opinion.   Although not stated as a belief merely, still such declarations concerning the character of another contained in letters of introduction are necessarily matters of belief and are understood to be based upon observation of conduct unless the declarant has some knowledge or notice to the contrary, in which case his statement would be fraudulent. But the guilty knowledge is not to be presumed in the absence of an averment of its existence.   The customs of the business world and a just sense of the situation preclude the idea that such letters imply a guarantee beyond that of the good faith of the writer.

If the acquaintances of a young man who is about to enter into business can declare their faith in his integrity only upon peril of pecuniary loss, many worthy

persons will be deprived of a very common means of favorable introduction to the confidence of others which often becomes the foundation of future success. This confidence is often the only capital of a man. Those who frankly and honestly vouch for his integrity should not suffer if he fail to meet their expectations. Where, however, the recommendation is made with knowledge of its falsity, or for a sinister purpose, the result may be otherwise. The letter does not indicate a purpose to be bound for the engagements of the person introduced, and no fraudulent purpose being alleged, the petition did not state a cause of action.

The judgment is affirmed.