Argued at Pendleton May 1, reversed and remanded July 18, rehearing denied September 26, 1922.

# BANK OF JORDAN VALLEY *v.* DUNCAN.

### (209 Pac. 149.)

**Bills and Notes—Evidence That Note Originated in Fraudulent Transaction Held to Place Burden on Plaintiff of Proving That It Took Note in Good Faith.**

1. In an action on a note by plaintiff, claiming to be a *bona fide* purchaser, in which there was evidence showing that the note originated in a fraudulent transaction, the plaintiff had the burden of proving that it took the note in good faith.

**Bills and Notes—Blank Indorsement by Payee Made Note Payable to Bearer and Negotiable by Delivery.**

2. Where maker made note payable to himself and thereafter indorsed the note in blank, the note under Section 7826, Or. L., became payable to bearer and negotiable by delivery.

**Dismissal and Nonsuit—Dismissal Without Prejudice Restores Parties to Former Position.**

3. A dismissal of an action without prejudice restores the parties to their former position.

**Bills and Notes—Defendant must Aver Real Party in Interest to Raise Issue as to Whether Plaintiff is Real Party in Interest.**

4. In an action on a note, the defendant, in order to raise the issue as to whether the plaintiff is the real party in interest, must by appropriate averment declare who is the real party in interest.

**Fraud—Requirements of Pleading Stated.**

5. In pleading fraud it must be stated that the representations made were false, that the person making them knew them to be false, that they were made with the intent to defraud, and that the party seeking to be relieved therefrom must have relied upon such representations.

**Bills and Notes—Allegations Held not Sufficient to Plead Fraud on Part of Plaintiff Sued on Note.**

6. In an action on a note by a bank claiming to be a *bona fide* holder, answer alleging that the note was given in payment of stock the defendants were fraudulently induced to purchase from agents of the corporation, who showed defendants a letter from the plaintiff bank stating that such agents were persons whose statements were entitled to full faith and credit and were responsible, without alleging that the plaintiff's officer who wrote the letter knew that any statement therein was false, and without alleging that the letter was written with the intention of defrauding defendant, or that the letter was accepted as a guaranty or that defendant gave plaintiff

---

For authorities discussing the question of recommendation of another as proper subject of credit as ground of liability, see notes in 35 L. R. A. 421, and L. R. A. 1915A, 100.

notice of acceptance, *held* insufficient to plead fraud on the part of the plaintiff; the letter not being in itself a sufficient basis for charge of fraud.

**Bills and Notes—Maker Who Alleges That Plaintiff had Actual Knowledge of Fraud must Prove Such Knowledge.**

7.   Under Section 7848, Or. L., where maker seeking to avoid payment of note on ground of fraud alleges that plaintiff had actual knowledge of the infirmity or defect, he must prove such allegation, and not merely the knowledge of such facts that plaintiff's action in taking the note amounted to bad faith.

**Bills and Notes—Purchaser not to Inquire About Infirmities in Absence of Suspicious Circumstances.**

8.   A person to whom a note negotiable in form is offered need not inquire about infirmities unless there are suspicious circumstances, but may purchase the note provided he acts in good faith, without searching for defects of which there is no indication on the face of the note, unless he has knowledge of such facts as would make his purchase a matter of bad faith.

**Witnesses—Defendant cannot Prove Case in Chief by Cross-examination of Plaintiff's Witnesses.**

9.   A defendant on cross-examination of plaintiff's witnesses cannot prove his case in chief.

**Bills and Notes—Failure of Consideration No Defense as Against Holder in Due Course for Value.**

10.   As against a holder in due course for value, failure of consideration is no defense.

**Bills and Notes—Submission of Question as to Plaintiff's Ownership of Note Held Error.**

11.   In an action on a note in which the answer itself imputed the ownership to the plaintiff and denied its right to recover on the ground that it acquired ownership with knowledge of alleged defect, it was error to submit the question of whether plaintiff was the owner of the note.

**Bills and Notes—Evidence Held Insufficient for Submission of Whether Plaintiff had Knowledge of Fraud.**

12.   In an action on a note, evidence *held* insufficient for submission of question of whether the plaintiff had knowledge of the fraud by which plaintiff had been induced to execute the note.

From Malheur: DALTON BIGGS, Judge.

In Banc.

REVERSED AND REMANDED.

For appellant there was a brief and oral argument by *Mr. Wells. W. Wood.*

For respondent there was a brief over the names of *Mr. Pat. J. Gallagher* and *Mr. W. H. Brooke;* (*Mr. John L. Rand* and *Mr. Julien A. Hurley,* of counsel), with an oral argument by *Mr. Gallagher.*

BURNETT, C. J.—The plaintiff, Bank of Jordan Valley, admittedly a banking corporation organized and existing under the laws of this state, avers in substance that on August 22, 1914, at Jordan Valley, Oregon, the defendant for value made and executed his promissory note in writing for the sum of $3,000, payable to his order in six months after date without grace, with interest at the rate of 7 per cent per annum from date until paid, with the usual provision for reasonable attorneys' fees in case suit or action should be instituted to collect the note; that immediately upon the execution of the note he indorsed the same in blank by writing his name across the back thereof; and that afterwards, prior to its maturity, the note was duly sold, assigned, transferred and delivered to the plaintiff for value, and the plaintiff is now the legal owner and holder thereof. It is alleged that $45 was indorsed as payment thereon on August 22, 1914, which the evidence shows was prior to the purchase of the note by plaintiff, and that there is now due and owing to the plaintiff from the defendant $2,955 with interest from August 22, 1914, at the rate mentioned, which the defendant fails and refuses to pay. Claiming $500 as a reasonable attorneys' fee, the plaintiff demands judgment against the defendant for the principal, interest and attorneys' fee.

For answer the defendant first "denies each and every allegation of the complaint of the plaintiff not herein expressly admitted." Further answering the complaint, the defendant pleads substantially that

about the date of the note two men representing themselves to be agents of the Bankers' Mortgage Corporation appeared at his residence in possession of a letter from the cashier of the plaintiff bank, addressed to the defendant, stating in substance, that "the bearers thereof were seeking to sell the stock of said corporation; that they were persons whose statements were entitled to full faith and credit and that said persons were in every way responsible." The answer goes on, stating in substance that the men proceeded to describe the condition and prospects of the mortgage corporation, the plan upon which it would carry on its business, saying that the par value of its shares of stock was $100 per share, but that they would sell to the defendant stock in the company at $65 per share; and that he informed them that he would subscribe and pay for so much of the stock at $65 per share, par value $100 per share, as would amount to $3,000, which was the largest sum he would invest in said stock. He goes on further to state that relying upon these statements, he "signed the promissory note alleged in the complaint in payment for stock in said mortgage corporation at $65 per share, par value $100 per share"; that the two men requested him to sign other papers which they represented contained nothing but the terms of purchase; that he signed the same without reading them or otherwise informing himself about their contents, but it transpired that the papers were actually another note for $10,000 with interest due December 31, 1914, and a contract to purchase two hundred shares of stock amounting to $13,000; but that he was not aware of the fraud practiced upon him by said agents until about January 1, 1915, when the note was presented to him for payment.

Respecting the knowledge of and connection with the transaction attributed to the plaintiff, the answer contains this allegation:

"The defendant further alleges that the said bank of Jordan Valley, through its said officer knew of the false and fraudulent representation hereinabove alleged, and knew that the said selling agents of said corporation intended to make such false and fraudulent representations to the defendant, at the time the said officer of the said bank issued the letter stating that the two selling agents of said mortgage corporation were reliable and trustworthy, as hereinbefore alleged and set forth, and that the said Bank of Jordan Valley had actual knowledge at the time it received the promissory note set forth in the complaint, that said note was procured from the defendant by means of false and fraudulent representation of the said selling agents of said mortgage corporation, as aforesaid; defendant further alleges that the said cashier of the plaintiff was aware of the false and fraudulent statements which the said Masse and Funnell intended to make, and which said persons did make to defendant concerning the sale and purchase of said stock, at the time said cashier gave to said persons the letter of recommendation, as aforesaid; that said cashier of plaintiff wrote said letter of recommendation for the purpose and with the intent of causing defendant to have faith and confidence in the said statements of said Masse and Funnell, in their proposal to sell the said stock to defendant, and defendant alleges that the said letter of cashier did cause him to believe as true all of the statements made to defendant in reference to the sale and purchase of said stock; defendant further alleges that as a consideration for the said letter from said cashier to defendant the said Masse and Funnell agreed to give said cashier a large sum of money in case the defendant was induced to purchase any of said stock, and defendant alleges on his information and belief that the said cashier of the plaintiff received the sum of one thousand dollars from said Masse and Funnell

for writing said letter to defendant; that said cashier of plaintiff knew at the time he wrote said letter to defendant that said Masse and Funnell were intending to make an attempt, by false and fraudulent statements to defendant to induce defendant to purchase a portion of the capital stock of said mortgage company; that plaintiff at all times since the promissory note, involved herein, was procured from defendant by means of the fraud and deceit, as aforesaid, has had actual knowledge that the said note was procured from the defendant by means of the false statements, acts and conduct of said Masse and Funnell as aforesaid, and that the plaintiff, through its cashier as aforesaid, was a party to the fraud and deceit practiced upon the defendant, as aforesaid.''

Continuing, the answer repeats largely the alleged fraudulent representations of the two agents as stated, and declares that on being presented with the notes by the plaintiff, the defendant advised the plaintiff bank through its president that the agreement to purchase two hundred shares of the stock was fraudulently obtained; that he would not pay the note for $10,000 or the note sued upon and that he would not purchase the two hundred shares of stock; that he has never received anything of value for the notes; and that no stock of the corporation was ever issued or delivered to him.

The reply puts in issue the matters alleged in the answer, except as stated. It avers that the letter referred to was one which the cashier of the plaintiff bank gave to the agents stating in effect that certain business men in and about Jordan Valley, Oregon, were owners of stock in the mortgage corporation and that they would have no objection to being associated with the defendant, in the event said defendant should become a stockholder therein, which statements were and are true, but said letter contained no

personal recommendation of said agents or either of them and did not state that they were reliable or responsible or entitled to full or any faith or credit. The reply concludes with an averment to the effect that on August 23, 1914, the plaintiff, in due course of business, before maturity of the note purchased the same from said agents for its full face value; that they then and there transferred and delivered the note to the plaintiff as its property; that at the time, neither the plaintiff bank nor any of its officers or agents had any knowledge whatever of the circumstances under which the note was executed by the defendant, and did not know or have any reason to suspect that there was any infirmity in said instrument or any defect in the title of the bearers thereof, but that plaintiff purchased the said note in good faith, and if said note was procured from the defendant by fraud or misrepresentation, neither the plaintiff bank nor any of its officers or agents knew anything about such fraud, were not parties to it and had no reason to suspect that any such conditions existed in the execution of said note.

A jury trial on these issues resulted in a verdict for the defendant, and the plaintiff appeals.

At the close of all the evidence on both sides of the case, when both parties had rested, the plaintiff moved the court to direct the jury to find a verdict for the plaintiff for the face of the note and the interest due thereon, and such reasonable attorneys' fee as the jury should determine, because the defendant had failed to prove a case sufficient to be submitted to the jury, in that he had "failed to show or introduce any evidence to show that the plaintiff bank does not own the note or that it is not a holder in due course, or that the paper was procured by fraud, or

that the plaintiff had any knowledge of any fraud in the procuring of the note or any other cause sufficient to constitute a defense to plaintiff's complaint and case." This motion was overruled and an exception allowed.

1. There was evidence given by the defendant and his wife sufficient to go to the jury, to the effect that the agents had made the representations to him as set forth in his answer; that he had agreed to and did give the note in question and indorsed it in blank; that they represented to him and he believed that he was contracting only for the purchase of $3,000 worth of the stock at $65 per share, whereas in fact he had signed papers, as the event proved, obligating himself to purchase two hundred shares and to pay therefor not only the $3,000 represented by the note in suit but also an additional note for $10,000. This was sufficient evidence to brand the transaction as fraudulent. As ruled in *Everding & Farrell* v. *Toft*, 82 Or. 1 (150 Pac. 757, 160 Pac. 1160):

"When it is shown that the title of any person who has negotiated the instrument was defective, the burden is on the holder to prove that he, or some person under whom he claims, acquired the title as a holder in due course": Or. L., § 7851.

The motion for a directed verdict in favor of the plaintiff was predicated on the assumption that the burden of proof was upon the defendant to show that the plaintiff was not a holder in due course. The holders of the note from whom the plaintiff acquired it perpetrated the fraud by which it was obtained from the defendant, if he is to be believed, and hence their title was defective, being corrupted by their own deceit. The evidence that the note originated in fraud was sufficient to cast upon the plaintiff the bur-

den of proving that it took the note in good faith, within the doctrine of *Everding & Farrell* v. *Toft, supra.* Therefore, the motion for a directed verdict for the plaintiff was properly overruled in the form in which it was addressed to the court.

2. It is well, before proceeding further, to settle some questions raised about the ownership of the note. It is averred in the complaint that the plaintiff is the owner thereof and under the first clause of the answer, denying as it does in general terms, "every allegation of the complaint of the plaintiff not herein expressly admitted," this averment of ownership on the part of the plaintiff is challenged, unless the further statements of the answer dispense with this traverse. It is said in the answer "that the defendant signed the promissory note set forth in the complaint; that said note was procured from the defendant by means of false and fraudulent representations," etc. As admitted by the defendant as a witness, he indorsed the note in blank, the effect of which was to make the note payable to bearer, and it could be negotiated by delivery: Or. L., § 7826. As stated, the defendant says, "the bank received the promissory note." It could not receive the same unless it had been delivered to it. Receiving is the complement of delivery. The legal effect of the averment in the answer is that the note was negotiated to the bank by delivery. The manifest purpose and intent of this part of the answer was to charge that the plaintiff took title to the note, and not only so, but also that it took that title with actual knowledge of the infirmity of the paper. By his own answer, the defendant traces to the plaintiff ownership of the note; otherwise that pleading is purely frivolous. It would be idle to plead as against the plaintiff any

knowledge of the fraud, unless it was intended to affect the title which the plaintiff had acquired. The ownership of the note, therefore, was not in issue. It stands admitted by the pleadings when construed according to their legal effect and as the defendant obviously intended when he made the statement alluded to.

3, 4. Over the objection of the plaintiff, the defendant submitted in evidence the judgment-roll in a case entitled *Beverly* v. *Duncan,* the defendant here, showing that prior to the commencement of this action Beverly had instituted action against the present defendant on this same promissory note, averring himself to be the owner thereof and demanding judgment for its amount. Issues were joined and afterwards, as the judgment-roll shows, without further proceeding, the action was dismissed without prejudice. The effect of the dismissal without prejudice was, so far as the action was concerned, to restore the parties to their former position, so that in legal effect the action came to naught, one way or the other. We have, then, a situation where the endeavor is to show that Beverly also averred ownership in this note at some time prior to the commencement of this action, with the purpose of showing that Beverly, and not the plaintiff here, is the real party in interest. If that, as it seems, is the object of the introduction of the judgment-roll, it was not admissible, for, as stated in *Overholt* v. *Dietz,* 43 Or. 194 (72 Pac. 695):

"There was no attempt to set up any proof that plaintiff was not the real party in interest. Under the authorities cited, such a defense should be specifically pleaded, and facts stated showing who the real party may be: *Curtis* v. *Gooding,* 99 Ind. 45; *Mathis* v. *Thomas,* 101 Ind. 119."

See also *McGregor* v. *Oregon Ry. & Nav. Co.,* 50 Or. 527, 538 (93 Pac. 465); *Rorvik* v. *North Pacific Lumber Co.,* 99 Or. 58 (190 Pac. 331, 195 Pac. 163). In other words, a defendant may deny the plaintiff's allegation of ownership of the note sued upon and thus put the latter upon his proof, but if the defendant wishes to go further and litigate the question of whether or not the plaintiff is the real party in interest, he must by appropriate averment declare who is the real party in interest, in default of which he can offer no evidence on the subject.

In passing, it may be noted that the evidence discloses a complete explanation of the Beverly action in this, that a brother of the defendant was a director of the plaintiff bank; that the defendant was a customer of the bank; and that to avoid consequent embarrassment of those personal relations the bank called upon the mortgage company to collect the note for the account of the bank, and thus avoid bringing the plaintiff into an annoying attitude against a near relative of its own director. There is no evidence that the bank authorized the action brought by Beverly against the defendant, but when the mortgage company failed to take up the note, the plaintiff would not surrender it. The undisputed evidence is that at all times after the bank purchased the note on the day after its execution the instrument remained in the custody of the bank as its property until delivered to its attorney for collection in this action. There was error in admitting in evidence the judgment-roll in *Beverly* v. *Duncan.*

5, 6. The only fraud imputed to the plaintiff directly, lies in the allegation about the letter which the agents of the mortgage corporation presented to the defendant. The letter itself was not introduced, the

defendant testifying that it was destroyed. The pleading is, that the letter ''stated in substance that the bearers thereof were seeking to sell the stock of said corporation; that they were persons entitled to full faith and credit; and that said persons were in every way responsible.'' The canon for pleading fraud has been enunciated many times in the decisions of this court to this effect, that in pleading fraud it must be stated that the representations made were false; that the defendant making them knew they were false; that they were made with the intent to defraud and that the party seeking to be relieved therefrom must have relied upon such representations: *Rolfes* v. *Russell,* 5 Or. 400; *Dunning* v. *Cresson,* 6 Or. 241; *Wimer* v. *Smith,* 22 Or. 469 (30 Pac. 416); *Martin* v. *Eagle Development Co.,* 41 Or. 448 (69 Pac. 216); *Anderson* v. *Adams,* 43 Or. 621 (74 Pac. 215); *Bailey* v. *Frazier,* 62 Or. 142 (124 Pac. 643); *Riddle* v. *Isaacs,* 97 Or. 404 (192 Pac. 398).

While there is a wealth of statement in the testimony of the defendant and his wife to the effect that after the letter was written the agents turned out to be unreliable, there is no averment or proof that at the time the plaintiff's officer, the cashier, wrote the letter, the plaintiff or any of its officers knew that any statement made in the letter was false. Neither is it stated directly that the plaintiff wrote the letter intending to defraud the defendant. In these respects the pleading fails to conform to the well-established standard already mentioned.

The substance of the defense here is that the defendant intended to and did give his note for $3,000 in payment for stock to be delivered to him, but that the transaction was clouded by contemporaneous fraud of the two men with whom he dealt, in palming off upon

him a contract and an additional note for $10,000, both of which he signed but did not read, obligating him to purchase two hundred shares of stock for an aggregate of $13,000. In other words, the defendant says: "It is true, I gave my negotiable promissory note for $3,000 knowingly and intentionally. I indorsed it in blank, publishing it to the world as current money among the merchants, negotiable by delivery from hand to hand. Not having received any stock for which I contracted, to cover this promissory note, I now seek to make the plaintiff here answer for the default and miscarriage of the concern or its agents with whom I contracted, and to impose upon the plaintiff the burden of my own carelessness in not reading the papers I was called upon to sign, and in publishing to the commercial world my negotiable promissory note." Taking the letter at full value as pleaded, it does not purport to underwrite the subsequent conduct of the agents. Neither is there any averment or proof that the letter was accepted as a guaranty or that the defendant gave any notice to the plaintiff of such acceptance: *Rothchild Brothers* v. *Lomax,* 75 Or. 395 (146 Pac. 497); *Balfour, Guthrie & Co.* v. *Knight,* 86 Or. 165 (167 Pac. 484); *Chittenden & Eastman Co.* v. *Saunders County Nat. Bank,* 102 Neb. 557 (168 N. W. 100, L. R. A. 1918F, 1143).

*Yates Center Nat. Bank* v. *Allen,* 92 Kan. 481 (141 Pac. 553, Ann. Cas. 1916F, 376, L. R. A. 1915A, 100), was a case founded on a letter of recommendation addressed to the plaintiff, reading thus:

"This letter will introduce to you Mr. Cecil C. Kennedy, who has just moved to your city to engage in the confectionary business. Mr. Kennedy is a son of Mr. D. M. Kennedy, our vice-president, and a boy whom I have known from infancy; he is honest and

upright in every particular, as well as energetic and attentive to business. If you can be of any assistance to him at any time in any way, his father as well as myself will very much appreciate the same.''

This was signed by the cashier of another bank. In complaining of the writer of the letter and seeking to recover damages to the extent of credit given to the young man, it was averred that he was not honest, upright, energetic or attentive to business, but was dishonest and wholly unreliable, and that the writer had made other false representations. The court, in disposing of the matter, after citing several authorities, said:

''Although not stated as a belief merely, still such declarations concerning the character of another contained in letters of introduction are necessarily matters of belief, and are understood to be based upon observation of conduct, unless the declarant has some knowledge or notice to the contrary, in which case his statements would be fraudulent. But the guilty knowledge is not to be presumed in the absence of an averment of its existence. The customs of the business world and a just sense of the situation preclude the idea that such letters imply a guaranty beyond that of the good faith of the writer.

''If the acquaintances of a young man who is about to enter into business can declare their faith in his integrity only upon peril of pecuniary loss, many worthy persons will be deprived of a very common means of favorable introduction to the confidence of others which often becomes the foundation of future success. This confidence is often the only capital of the man. Those who frankly and honestly vouch for his integrity should not suffer if he fail to meet their expectations. Where, however, the recommendation is made with knowledge of its falsity, or for a sinister purpose, the result may be otherwise. The letter does not indicate a purpose to be bound for the engagements of the person introduced, and, no fraudu-

lent purpose being alleged, the petition did not state a cause of action.''

In the precedent cited, the court refers to *Russell v. Clark's Exrs.,* 7 Cranch, 69 (3 L. Ed. 271, see, also, Rose's U. S. Notes), where the opinion was written by Mr. Chief Justice MARSHALL; also *Hardy v. Pool,* 41 N. C. 28, where goods were sold on faith of a letter saying:

"I am satisfied you will be safe in selling him any amount he may see proper to purchase. From my long acquaintance with him, I do not hesitate to say that he is as punctual a man as any I know."

Mr. Chief Justice RUFFIN there said:

"It is plainly not a letter of credit, in which Freewater undertakes anything for Wright, but a representation merely of his opinion of the other's solvency and punctuality. It is not an engagement at all, and indeed, as there is no intimation of *mala fides* on his part, he must be taken to believe what he said, and therefore no recovery could have been made from Freewater on it in any form."

In *Lord* v. *Colley,* 6 N. H. 99, 102 (25 Am. Dec. 445), the letter involved read thus:

"This may certify that Josiah Hobbs, Jr., is competent to pay the sum of $100 within any reasonable term of time, and we hereby recommend him as possessing credit to that extent."

Commenting on this writing, the court said:

"It is well settled that an action of this kind cannot be sustained, unless the recommendation be both false and fraudulent. Recommendations are generally understood to be nothing more than the opinion of those who give them, resting upon common reputation, and the apparent circumstances of the individual recommended, and not upon any minute examination of his affairs. And it is well known that men who are apparently in good credit, and in easy circumstances,

turn out to be, in reality, insolvent. It is therefore very obvious that a recommendation ought not to be presumed to be fraudulent merely because it happens not to be true.''

*Loeb* v. *Godchaux,* 2 McGloin (La.), 140, was a case where the defendants represented the man to whom the plaintiffs extended credit to be ''good and honest.'' In *Kenneweg Co.* v. *Finney,* 98 Md. 114 (56 Atl. 482), the defendants writing to their correspondent, the plaintiff, about the responsibility of a party with whom the latter contracted, said:

''We would say that the contract is good, and that we will look after the same both to your interest and for our own.''

*Crooks* v. *Propp,* 32 Misc. Rep. 309 (66 N. Y. Supp. 753), involved this letter:

''He [Singer] wishes to purchase a full line of groceries, and I recommend him to you. They [Singer & Romanoff] are perfectly reliable and will pay as soon as bills mature. Any favors conferred upon Mr. D. H. Singer will be appreciated by me.''

''We regard him as a perfectly reliable, trustworthy gentleman,'' was the language of a letter relied upon in *Hughes & Co.* v. *Peper Tobacco Warehouse Co.,* 139 N. C. 158 (51 S. E. 793, 111 Am. St. Rep. 778, 1 L. R. A. (N. S.) 305). See also *Huffstetler* v. *Our Home Life Ins. Co.,* 67 Fla. 324 (65 South. 1); *Potter* v. *Gibson,* 184 Ill. App. 112.

Under the precedents cited, the letter as pleaded is not in itself a sufficient basis for a charge of fraud. There is nothing to show but that the expressions attributed to the plaintiff's cashier were his honest opinion of the men involved; and it is not charged that he knew the statements of the letter to be false. Indeed, it is not directly averred that the statements

in the letter were untrue when written. The mere fact that the two men afterwards acted fraudulently towards the defendant cannot be charged to the plaintiff, unless it participated in the fraud itself.

7. The evidence is plain and uncontradicted that the two men who transacted the business with the defendant appeared at the bank with the note in suit indorsed in blank in their custody, and, having credited $45 as a payment thereon, sold and delivered it to the bank for its full face value, and that the bank issued its certificate of deposit to the mortgage corporation for the amount of the note, which it afterwards paid in full. There is no evidence whatever to contradict this. The question then recurs, whether or not the plaintiff had any notice of the infirmity or defect in the instrument arising from the alleged deceit practiced upon the defendant by the agents of the mortgage corporation. Section 7848, Or. L., reads thus:

"To constitute notice of infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith."

The answer abundantly pleads actual knowledge of the infirmity or defect alleged to be inherent in the instrument. It goes so far as to charge that the officer of the plaintiff knew in advance that the selling agents of the corporation intended to make the false and fraudulent representations at the time the letter was issued, and that the plaintiff had actual knowledge that the note was so procured; that the cashier of plaintiff wrote the letter for the purpose and with the intent of causing the defendant to have faith and

confidence in the statements of the agents; and that the latter agreed to and did pay to the cashier $1,000 for writing the letter. This is ample in averment, but in all the testimony there is not a syllable of proof thereof. The evidence imputes no knowledge whatever on the part of the plaintiff that there was any illegality whatever in obtaining the note in suit. According to the only testimony on the subject, the note described in the complaint is the only one offered to the bank or exhibited to it at any time the bank took title to it. There is no evidence in any way indicating that the bank ever had the $10,000 note in its possession or that it had any knowledge of it until long after it had purchased the note sued upon in this action. The defendant, having alleged "actual knowledge of the infirmity or defect," must prove his averment as alleged. He has not averred the other alternative of the section, namely, "knowledge of such facts that his action in taking the instrument amounts to bad faith"; and moreover, the testimony discloses no such situation.

8. When a maker publishes his note to the world, negotiable in form, it is not incumbent upon anyone to whom it is offered, unless there be circumstances of suspicion, to busy himself inquiring about infirmities. He has a right to purchase the note, provided he acts in good faith, without searching for defects of which there is no indication on the face of the note, unless he has knowledge of such facts as would make his purchase a matter of bad faith. Nothing of that kind appears in the evidence. On the contrary, the proof is uncontradicted that the transaction of taking the note was the ordinary negotiation of commercial paper in the usual course of business, without anything whatever to indicate that it originated in fraud.

If properly applied to, the court might well have directed the jury to find a verdict in favor of the plaintiff for the full amount of the note with interest at the date of the verdict, together with such sum as the jury might determine reasonable for an attorneys' fee.

Other errors are assigned of minor importance, but it becomes necessary to notice them because the case must be reversed and remanded for further proceedings.

9. The witnesses Miller and Looney, respectively the cashier and assistant cashier of the plaintiff at the time the note was negotiated to the bank, described the transaction of the purchase of the note, saying nothing whatever about the letter upon which the defendant claims he relied. Over the objection of the plaintiff, the defendant was permitted to cross-examine them about the issuance of that letter. It was not proper cross-examination, but was part of the defendant's case in chief. Under such circumstances, the defendant is not at liberty to prove his own case by cross-examination of opposing witnesses.

The two agents mentioned appeared at the bank as holders of the note. It was indorsed in blank, negotiable by delivery, and they were in possession thereof, constituting them holders, who are deemed *prima facie* to be such in due course. It is charged, and there was evidence to sustain the allegation, that their title was defective in that they perpetrated a fraud upon the maker of the note in seeking its execution. If they participated in that fraud and acquired possession of a note so indorsed as to make it payable to bearer, their title was defective. The defendant was entitled to show this, in order to cast upon the plaintiff as the present holder, the burden

of proving that it acquired the title as a holder in due course.

10. In view of the uncontradicted evidence in behalf of the plaintiff that it acquired the title to the note in due course, it was error to allow the defendant to show that he had never received any stock or other consideration for the note. As against a holder in due course for value, failure of consideration is no defense. The court was likewise wrong in permitting the defendant to cross-examine the assistant cashier as to whether or not he had brought into court any stock in the mortgage corporation for the defendant. There is nothing in the pleadings to show that any obligation to do so was ever assumed by or imposed upon the plaintiff.

11. Instruction numbered "3" in the bill of excep· tions submitted to the jury the question of whether or not the plaintiff was the owner of the note. This was erroneous, because the answer itself imputes ownership of the note to the plaintiff, but attacks its right to recover on the ground that it acquired that ownership with knowledge of the alleged defect.

12. By instruction numbered "11" the court submitted to the jury the question of whether or not the plaintiff had actual knowledge of the infirmity alleged to exist in the paper. This was erroneous, for a careful examination of the record discloses that there is no evidence whatever that the plaintiff had any such knowledge.

Instruction numbered "12" reads thus:

"Now the knowledge of the plaintiff of either of two things would constitute an infirmity in this note. If the plaintiff had knowledge of the fraud in the inception of the transaction, or knowledge of such circumstances as would amount to bad faith, in that re-

spect he would not be a holder in due course; or if plaintiff had actual knowledge that the note given was subject to a contract between the defendant and the Bankers' Mortgage Corporation, or of such circumstances as made it amount to bad faith in taking the note without taking it subject to that contract, then this would constitute a knowledge of such infirmity as would prevent the holder of the note from being a holder in due course. It is for you to take these circumstances and determine from the circumstances detailed in evidence whether or not the plaintiff was a holder in due course, as this term has been defined to you in these instructions; and if you find that the plaintiff was a holder in due course, under these instructions, then the defense of fraud is not available to the defendant; neither is the defense of failure of consideration available to the defendant. In other words, if you find in this case that the plaintiff is the holder in due course, under the definition which I have given you, then you must find for the plaintiff in this case; there is no defense to it. If, however, you fail to find that he [it] was a holder in due course, or find that he [the bank] was not a holder in due course, you may consider the defense of fraud.''

The instruction was wrong in leaving it to the jury to determine whether or not the plaintiff had knowledge of any fraud in the transaction, for there is no evidence whatever that the plaintiff had any such knowledge until long after the negotiation of the note to it. Again, the instruction is erroneous in that it allows the recovery of the plaintiff to be defeated, if it had actual knowledge that the note was given subject to a contract between the defendant and the mortgage corporation, irrespective of whether or not there was a breach of the contract known to the plaintiff. In regard to the contract, only knowledge of the breach of it at or before purchasing the note would

affect its negotiability in the plaintiff's hands. The effect of this instruction would be to make the plaintiff answerable for the failure of the mortgage company to fulfill its contract, all without any writing complying with the statute of frauds.

There are other errors assigned, but they are not of sufficient importance to merit extended consideration.

When a man publishes his negotiable promissory note and launches it into commercial operations, he must expect to pay it absolutely and at all events, unless the one who acquires it before maturity takes the paper with actual notice of its infirmities or under circumstances indicating bad faith. By his act he places it in the power of those with whom he deals to defraud other people. Hence he must bear the blame and the consequences himself, who inaugurated the means of subsequent fraud. While there is a wealth of averment that the plaintiff had notice of the alleged fraud, and of the circumstances upon which it is predicated, there is not a line or syllable of testimony tending in the least to establish that knowledge or bad faith which would impeach the plaintiff's title. As the defendant gave his note for the amount named and there is no evidence that the plaintiff is not a holder in due course, but on the contrary all the evidence is uncontradicted that the plaintiff did take the same in due course, for value, and in good faith, he should be required to pay his note according to his engagement.

On the record there is really nothing in dispute except the reasonableness of the attorneys' fees, which question should be left to the jury for its determination. Otherwise a verdict ought to have been directed for the plaintiff for the full amount of the note. The

judgment is reversed and the cause is remanded for further proceedings not inconsistent with this opinion.

REVERSED AND REMANDED.

Mr. Justice RAND did not participate in the hearing or decision of this case.