Submitted on briefs October 5, affirmed October 18, rehearing denied November 22, 1927.

# THE BANK OF CALIFORNIA v. HARRY YOUNG.

### (260 Pac. 227.)

**Bills and Notes—Depositor's Draft, Directing Payment to Bank's Order on Demand and Charge to Drawer's Account, was Negotiable (Or. L., § 7793).**

1. Under Section 7793, Or. L., depositor's draft, directing drawee to pay amount on demand to order of bank and charge to depositor's account, was a negotiable instrument.

**Bills and Notes—Bank Holding Negotiable Draft in Due Course for Value may Recover Thereon, Regardless of Alleged Agency of Original Depositary for Depositor (Or. L., § 7849).**

2. Under Section 7849, Or. L., bank holding, in due course for value, negotiable draft of depositor in another bank is entitled to recover thereon, regardless of defense of relationship of principal and agent between original depositary and depositor.

**Banks and Banking—Deposit of Negotiable Instrument for Collection Establishes Relation of Principal and Agent, not Debtor and Creditor.**

3. Deposit of negotiable instrument with bank for collection establishes relation of principal and agent, not of debtor and creditor, between bank and depositor.

**Banks and Banking—Original Depositary's Agency for Drawer of Draft Does not Preclude Transfer of Superior Title to Its Correspondent.**

4. Existence of relationship of principal and agent between original depositary and drawer of draft does not preclude former's transfer to its correspondent of title superior to that possessed by transferor.

**Bills and Notes—Correspondent Bank, Accepting Draft in Good Faith Before Maturity and Crediting Payee Bank's Account With Full Amount, Became Purchaser for Value When Payee Bank Checked Out Fund.**

5. Correspondent bank, accepting in good faith for full value before maturity, without notice of infirmities, and crediting account of payee bank with amount of draft delivered without qualified or restricted indorsement to payee, which credited full amount to drawer's checking account and forwarded draft as apparent owner

---

1. See 3 R. C. L. 843.
3. See 3 R. C. L. 610.
5. See 3 R. C. L. 637.

to correspondent bank, became a purchaser for value when payee bank checked out fund so arising, though claiming right to charge draft back to depositor if not paid.

---

Banks and Banking, 7 C. J., p. 597, n. 32, p. 598, n. 33, p. 599, n. 43, p. 600, n. 44, 46, p. 606, n. 86 New.

Bills and Notes, 8 C. J., p. 53, n. 74, p. 475, n. 4, p. 720, n. 17, p. 775, n. 6.

From Multnomah: GEORGE F. SKIPWORTH, Judge.

In Banc.

The plaintiff brought this action for the recovery of money against the defendant as the drawer of a draft for $1,626.95. The facts are stipulated.

On December 2, 1926, and for several months prior thereto, the defendant carried a commercial checking account with the Bank of Kenton, and on that date and prior thereto the Bank of Kenton carried a like account with the plaintiff corporation. On November 30, 1926, the defendant prepared and delivered to the Bank of Kenton a draft or bill of exchange, reading:

"Bank of Kenton.          24–60.

"Portland, Oregon, Nov. 30, 1926.

"On demand, pay to the order of Bank of Kenton $1626.95 One Thousand Six Hundred Twenty Six and 95/100 Dollars, value received, and charge to account of

"HARRY YOUNG.

"To Wm. Gabel,
          "First Nat. Bank, Oakdale."

Simultaneously, he prepared a deposit slip following the form used by that bank, the slip being substantially as follows:

"Deposited with
"BANK OF KENTON

"By Harry Young,
          "Portland, Oregon, Nov. 30, 1926.

"All items other than cash are received on deposit with the express understanding that they are taken

for collection only. Unpaid items will be charged
back to the depositor's account.

 "Please List Each Check Separately.

"Dollars Cents

"Gold

"Silver

"Currency

"Checks as follows:

 "Draft on Wm. Gabel,

 "Oakdale, Calif. ............. ...... $1,626 95

"See that all checks and drafts are indorsed."

This deposit slip he delivered to the Bank of Ken-
ton, together with the above-described draft. The
bank accepted the draft for deposit, credited on its
books to the checking account of the defendant the
amount of money represented thereby, and entered
that amount in his pass-book as cash. Of these facts
the plaintiff had no knowledge. On the same date,
the Bank of Kenton deposited the draft with the
plaintiff, after placing thereon the following indorse-
ment:

"Pay to the order of Bank of California, N. A.,
Portland, Oregon. All prior indorsements guaran-
teed.

"Bank of Kenton,<br>"R. R. Thatcher, Cashier."

In making the deposit with the plaintiff, the Bank
of Kenton prepared a form of deposit slip habitually
used by the plaintiff, which reads, in part:

"Deposited with the Bank of California, National
Association, subject to conditions below, by Bank of
Kenton, Portland, Oregon, November 30, 1926, * *
draft on William Gabel, Oakdale, California, $1,626.95
* *. In receiving out of town items for deposit or
collection, this bank acts in all cases as the agent of
the depositor, and it and its controlling agents may

123 Or.—7

accept cash or bank draft in payment of such items and shall not be answerable for items lost in transit or for any act or default of any bank who may receive such items for collection, either directly or indirectly, and shall only be held liable, when items have been paid by the drawee and proceeds in actual funds or solvent credits shall have come into its possession. Under these conditions items for which actual funds or solvent credits have not been received by this bank may be charged back to the depositor's account.''

With the above-described draft deposited by the Bank of Kenton with the plaintiff corporation, other bank checks and drafts were deposited, and these were likewise included in the deposit slip last above set out. Upon receipt of the deposit slip by plaintiff, together with the checks and drafts named therein, the amount of $1,626.95, i. e., the amount represented by the draft in question, with other sums, was credited to the checking account of the Bank of Kenton and entered in the pass-book of that bank.

At the close of business by the Bank of Kenton at 3 P. M. on November 30, 1926, the defendant had to his credit and subject to his check, including the $1,626.95 represented by the draft delivered by him to the bank for deposit, a balance of $1,749.98. On December 1st he made a further deposit in the bank of $296.05, but withdrew from his account by check the sum of $963.85. At the close of business on November 29, 1926, the Bank of Kenton had overdrawn its checking account with the plaintiff to the extent of $4,574.95, and, at the opening of business on November 30th, was indebted to plaintiff in that amount. The total deposit made by the Bank of Kenton with the plaintiff on November 30, 1926, including the item of $1,626.95, was $140,451.18. This amount was

passed to the credit of the Bank of Kenton in its account with plaintiff, and was subject to check or draft. Out of the deposit of $140,451.18, plaintiff first charged the account of the Bank of Kenton with the amount of the overdraft carried on November 29th. In addition, there were presented to and paid by plaintiff, and charged to the account of the Bank of Kenton, checks and drafts drawn upon plaintiff by the Bank of Kenton amounting to $144,992.61, thus absorbing the entire deposit of $140,451.18 and leaving an overdraft of $9,116.40; so that, at the close of business at 3 P. M. November 30, 1926, the Bank of Kenton was indebted to plaintiff on its account in that amount.

On or about December 3, 1926, and some time before the draft was presented to William Gabel for payment, defendant countermanded the payment of the same and instructed the drawee not to honor it. Thereafter, the draft was presented to Gabel, who refused payment thereof.

The case was tried to the court without a jury. The trial resulted in a judgment for plaintiff in the sum of $1,626.95, with interest. Defendant appeals.

AFFIRMED. REHEARING DENIED.

For appellant there was a brief over the names of *Mr. J. F. Boothe* and *Mr. Ben H. Conn.*

For respondent there was a brief over the name of *Mr. Thomas G. Greene.*

BROWN, J.—1, 2. A draft such as the one drawn by the defendant in this case is a negotiable instrument. It is made so by the negotiable instrument statute of Oregon: Or. L., § 7793. When the plain-

tiff is a holder in due course, for value, of the commercial paper in question, then he is entitled to recover thereon, regardless of the defense of an alleged existence of the relationship of principal and agent between the original depositary and the depositor: Or. L., § 7849. These propositions of law cannot be controverted.

3-5. The plaintiff does not question the well-established rule that, when a negotiable instrument is deposited with a bank for collection, the relation of principal and agent is thereby established between the bank and the depositor, and not the relation of debtor and creditor: 2 Michie, Banks and Banking, § 156; *National Revere Bank* v. *National Bank,* 172 N. Y. 102 (64 N. E. 799); *Jefferson County Savings Bank* v. *Hendrix,* 147 Ala. 670 (39 South. 295, 1 L. R. A. (N. S.) 246). Moreover, the existence of the relationship of principal and agent between the original depositary and the drawer of the draft does not preclude the transfer by it to its correspondent of a title superior to the title it possessed: *Blacher* v. *National Bank,* 151 Md. 514 (135 Atl. 383, 49 A. L. R. 1366), and authorities there cited. However, the negotiable instrument forming the basis of this action bore no qualified or restricted indorsement tending to show that it was deposited for collection. It was complete and regular upon its face, and required the drawee to pay to the Bank of Kenton, payee, the sum of $1,626.95. The defendant had put it into circulation in the form of a draft by uttering, publishing and delivering it to the Bank of Kenton, payee therein, whereupon the bank credited to his checking account the full sum of $1,626.95. Shortly thereafter, he withdrew by his personal check about one half of the amount named in the draft. The Bank of Ken-

ton, not as agent for the defendant, but as the apparent owner and holder of the draft, forwarded it, with others, to the plaintiff bank, as transferee thereof. The transferee received it from the original depositary in good faith, for full value, before it was due, and without notice of any infirmities therein. The correspondent bank likewise gave the depositary credit in the amount represented by the draft and paid the amount in full. Thereafter, and prior to its presentation by the plaintiff bank to the drawee, the defendant arrested payment of his negotiable paper by warning the drawee not to pay.

Notwithstanding the fact that the plaintiff claimed the right to charge back in the event that the draft was not paid, it accepted the draft and credited the account of the Bank of Kenton for the amount of money represented thereby, and when the Bank of Kenton checked out the fund arising from the entry of that credit the status of the correspondent bank became that of a purchaser for value: *Bank of Jordan Valley* v. *Duncan,* 105 Or. 105 (209 Pac. 149). In that case, Mr. Chief Justice BURNETT, speaking for this court, said:

"When a maker publishes his note to the world, negotiable in form, it is not incumbent upon anyone to whom it is offered, unless there be circumstances of suspicion, to busy himself inquiring about infirmities."

The appellant cites and relies upon the case of *Security Savings & Trust Co.* v. *King,* 69 Or. 228 (138 Pac. 465). That case is not applicable. There the controversy was between the depositor and the original depositary, while in the case at bar the rights of a third person are involved.

The effect of an agreement to charge the paper back to the depositor in the event of nonpayment is treated in the illuminating and recent case of *City of Douglas* v. *Federal Reserve Bank of Dallas*, 271 U. S. 489, 492 (70 L. Ed. 1051, 46 Sup. Ct. Rep. 554), where the Supreme Court of the United States, speaking through Mr. Justice STONE, said:

"When paper is indorsed without restriction by a depositor, and is at once passed to his credit by the bank to which he delivers it, he becomes the creditor of the bank; the bank becomes owner of the paper, and in making the collection is not the agent for the depositor (citing authorities). Such was the relation here between the plaintiff and the Douglas Bank, unless it was altered by the words printed on the passbook to the effect that out of town items were credited 'subject to final payment.' The meaning of this language, as the cashier of the Douglas Bank testified, and as the court below held, was that if the check was not paid on presentation, it was to be charged back to plaintiff's account. * * Without these words, the relationship between the plaintiff and the bank was that of indorser and indorsee; and their use here did not vary the legal rights and liabilities incident to that relationship, unless it dispensed with notice of dishonor to the depositor. * *

"While there is not entire uniformity of opinion, the weight of authority supports the view that, upon the deposit of paper unrestrictedly indorsed, and credit of the amount to the depositor's account, the bank becomes the owner of the paper, notwithstanding a custom or agreement to charge the paper back to the depositor in the event of dishonor: *Burton* v. *United States*, 196 U. S. 283 (49 L. Ed. 482, 25 Sup. Ct. Rep. 243); *Brusegaard* v. *Ueland*, 72 Minn. 283 (75 N. W. 228); *National Bank of Commerce* v. *Bossemeyer*, 101 Neb. 96, 102 (162 N. W. 503, L. R. A. 1917E, 374); *Walker & Brock* v. *Ranlett Co.* 89 Vt. 71 (93 Atl. 1054); *Aebi* v. *Bank of Evansville*, 124

Wis. 73 (102 N. W. 329, 109 Am. St. Rep. 925, 68 L. R. A. 964). See *Scott* v. *McIntyre Co.,* 93 Kan. 508 (44 Pac. 1002, L. R. A. 1915D, 139); *Vickers* v. *Machinery Warehouse & Sales Co.,* 111 Wash. 576 (191 Pac. 869). But see *Implement Co.* v. *Bank,* 128 Tenn. 320 (160 S. W. 848); *Packing Co.* v. *Davis,* 118 N. C. 548 (24 S. E. 365)."

For decisions relating to the title to commercial paper deposited by the customer of a bank to his credit, see *Old National Bank* v. *Gibson,* 105 Wash. 578 (179 Pac. 117, 6 A. L. R. 247); *United States National Bank* v. *Amalgamated Sugar Co.,* 179 Fed. 718; 2 Morse on Banks and Banking, § 573, pp. 238, 239; 6 A. L. R. 252; 11 A. L. R. 1043; 16 A. L. R. 1084; 24 A. L. R. 901; 42 A. L. R. 492.

We have considered all questions raised on the appeal and find no reason for a reversal. This case is affirmed.    AFFIRMED.    REHEARING DENIED.